FISHER *v.* KEWEENAW LAND ASSOCIATION.

1. WORDS AND PHRASES—SAND—GRAVEL—MINERALS.
   Sand and gravel must be considered as minerals under the primary classification of matter as animal, vegetable, or mineral.

2. DEEDS—CONSTRUCTION OF TERMS.
   Language of a deed must be given its natural and common meaning such as the contracting parties must have contemplated and understood under the circumstances surrounding the transaction.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 36 Am Jur, Mines and Minerals §§ 5, 35.
[2] 16 Am Jur, Deeds § 160 *et seq.*
[3] 36 Am Jur, Mines and Minerals §§ 5, 35.
   Conveyance or reservation of minerals as including minerals recoverable only by open pit mining. 1 ALR2d 787.

3. Same—Reservations—Minerals—Sand and Gravel.
      Sand and gravel, used for highway construction purposes, *held*,
        not included in deed's reservation of "all ores and minerals
        situated in, upon or under said land * * * and the right
        * * * to enter * * * and there explore, search, dig and
        mine for ore and minerals, * * * and to cave the surface"
        and requiring the payment to the surface owner for occupancy
        or caving in of the surface, where the land was in an area rich
        in mineral deposits of metallic ores obtained largely from under-
        ground operations, since the parties did not appear to have in
        mind the actual reservation of surface soil even though it might
        be mineral in character.

Appeal from Ontonagon; Wright (Robert R.), J. Submitted November 7, 1963. (Calendar No. 60, Docket No. 49,901.) Decided December 2, 1963.

Bill by John H. Fisher and Donald J. Fisher against the Keweenaw Land Association, a limited partnership association, to quiet title and determine ownership of sand and gravel in land. Cross-bill claiming rights under mineral reservation. Decree for plaintiffs. Defendant appeals. Affirmed.

*Walsh & Munro* (*Donald L. Munro*, of counsel), for plaintiffs.

*Davidson, Clancey & Hansen* (*Walter L. Hansen*, of counsel), for defendant.

Carr, C. J. This case involves the interpretation of a reservation in a conveyance of land in Bergland township, Ontonagon county. Defendant, being the owner of said property on November 28, 1945, conveyed the same by warranty deed to George Heider and wife, the conveyance containing the following language:

"And saving, excepting and reserving to said party of the first part, its successors or assigns,

forever, all ores and minerals situated in, upon or under said land, or any part or parts thereof, and the right at all times to enter upon said land, or any part or parts thereof, and there explore, search, dig and mine for ores and minerals, and freely carry on the business of mining and removing ores and minerals, and for such purpose or purposes to take, use and occupy so much and such parts of said land, and to cave the surface thereof, and for such term of time, as said party of the first part, its successors or assigns, shall deem expedient, without any let, hindrance or interference by the parties of the second part, their heirs or assigns: Provided, that if said party of the first part, or the successors or assigns of said first party, shall require the surface of said land, or any part thereof, for permanent occupancy, for the purposes aforesaid, or shall cave the surface thereof, or shall damage any part of the surface of said land, or the improvements on such part, said first party, or the successors or assigns of said first party, so occupying or so damaging, shall pay said second parties, or the heirs or assigns of said second parties, for the land so caved or occupied, or for the damages so caused, but not exceeding in amount the actual prior market or salable value of the part or parts of land so caved, occupied or damaged; together with the salable value of the buildings, structures, crops, fences or other improvements that shall then be on the part or parts of said land so caved, occupied or damaged, and belonging to said second parties or to the heirs or assigns of said second parties."

Plaintiffs in the instant case acquired title to the property from George Heider, as survivor of himself and wife, by warranty deed dated October 12, 1955. Subsequently, and apparently in November, 1959, plaintiffs entered into an agreement with Fox Valley Construction Company for the sale of sand and gravel from the premises, which company pro-

ceeded to remove gravel from the land during 1960 for use on State highway department projects. Defendant filed notice of lien with the State highway department alleging that it owned the sand and gravel in question. Such claim was denied on behalf of plaintiffs, and the instant suit seeking a decree to quiet title and for other incidental relief was instituted on March 2, 1961.

Plaintiffs alleged in their pleading that by virtue of the conveyance under which they held title to the land they became the owners of sand and gravel located thereon. It was asserted in the answer of defendant that under the reservation above quoted from its deed to George Heider and wife it was the owner of the sand and gravel on the premises in question, including that which had been removed and sold for highway improvement purposes. On the hearing in circuit court it was insisted on behalf of defendant that sand and gravel must be classified as minerals and that, as such, title thereto was reserved to defendant under the terms of its conveyance. The trial judge disagreed with such contention, saying, in part, in the written opinion filed by him:

"Mineral reservations are not uncommon in this area. This particular part of the State of Michigan is rich in mineral deposits consisting of metallic ores. Mining has been 1 of the chief industries for more than half a century. The defendant organization for a great many years has dealt in real estate and mineral reservations. In this particular area mining has consisted mostly of underground operations. In areas where underground operations are for the purpose of removing iron ore there is a considerable amount of subsidence or caving when the ore is removed. This caving often affects the surface. These mining operations require power plants, shops, stockpile grounds and other accessories in the area of the mines. These mining operations re-

quire surface areas. Provision for these require-
ments appear in the reservation. Mining for me-
tallic ores is entirely different from the procedure
used for removing gravel. In removing gravel the
surface is not caved but is removed. Gravel deposits
are usually at the surface and part of the soil. The
equipment for removing and loading gravel is ordi-
narily in the pits, requiring no extra surface area.
Underground mining of gravel, at least in this part
of the country, is unknown.

"A careful reading of the language of the reserva-
tion of the deed in question leads to the conclusion
that the reservation of ores and minerals and the
business of removing ores and minerals as set out in
the reservation in the deed, is peculiar to mining
metallic ores or metal-bearing minerals and con-
templated in the deed the reservation of, title to and
the mining and removing of metallic ores only. The
words 'all minerals' are used in limited context.
When considered in its entirety the reservation is
not broad enough to convey an intention on the part
of the parties to the deed that all minerals of every
description, gravel, sand, soil, oil, water, metallic
ores, stone and other minerals, were included."

Decree was entered accordingly, granting the relief
sought by plaintiffs, and defendant has appealed.

It is undisputed that under the primary classifica-
tion of matter as animal, vegetable, or mineral, sand
and gravel must be considered as minerals. On be-
half of plaintiffs, however, it is insisted that in
construing conveyances, or reservations therein, the
term "mineral" may have a more restricted meaning,
dependent on the intention of the parties to the par-
ticular transaction involved. In support of such
theory reliance is placed on the decision of this Court
in *Deer Lake Company* v. *Michigan Land & Iron
Company,* 89 Mich 180. There the defendant claimed
under a conveyance granting to it reservations of

mineral rights owned and possessed by the Marquette, Houghton & Ontonagon Railroad Company. Deposits of marble and serpentine were discovered on the property, and defendant entered into a lease for the development thereof. Plaintiff claimed title to the land in question under a warranty deed containing a mineral reservation. Contending that the marble and serpentine deposits were not embraced within the terms of the reservation of mineral rights, plaintiff brought suit to quiet title. Defendant urged an interpretation of the reservations, involved in the conveyances referred to, in effect covering all mineral rights. The issue involved was decided by this Court in favor of the plaintiff's contention, the finding of the circuit judge on the particular point in issue being adopted. Such finding read as follows (p 186) :

"It seems proper, in a case like the present, to give the language its natural and common meaning, such as the contracting parties must have contemplated and understood under the circumstances surrounding the transaction. At that time, no marble or serpentine was known to exist in the country. The only valuable mineral found in that portion of the country was iron. In a subsequent portion of the same deed are elaborate provisions as to delivery of iron ore. Manifestly the principal consideration in the minds of the parties was iron ore. At most, it seems to me they could have only meant, and a natural construction would only cover, mines and ores of metals and minerals in common use, and commonly known as such, and would not include quarries or deposits of marble, serpentine, or other building material, although they do belong to the mineral kingdom. The construction contended for would reserve everything but the timber, and render the deed nothing more than a license to enter and cut the same, with, perhaps, a lease of the land dur-

ing the pleasure of the grantor. Such, clearly, was not the intention of the parties."

Counsel for defendant cite and rely on *Matthews v. Department of Conservation*, 355 Mich 589. That case involved the interpretation of a reservation of mineral rights in a conveyance by the defendant department pursuant to statutory authority. In determining the scope of the reserved rights, specifically that such included sand and gravel, attention was called to the fact that by statute the department was authorized to sell reserved minerals, including those nonmetallic in composition. The offer to purchase the property conveyed to Matthews was made on a form supplied by the department of conservation which contained a parenthetical clause, following a quoted reservation of mineral rights, stating that:

"Mineral rights include sand and gravel."

Such parenthetical clause was not specifically set forth in the deed but this Court concluded that in the negotiations leading up to the execution and delivery of the conveyance to plaintiff the parties had dealt on the basis of the statement as to the inclusive scope of the reservation, and the statutory authority of the department with reference to the sale of the reserved rights in nonmetallic minerals. In other words, the decision turned on the particular facts involved, and such being the case it cannot be regarded as controlling in the instant litigation. It may not be regarded as at variance with the holding in *Deer Lake Company* v. *Michigan Land & Iron Company, supra.*

The decisions by courts of other States in which the question here involved has arisen are not altogether in accord. We think, however, that the weight of authority supports the conclusion reached by the trial judge in the case at bar. In many in-

stances the rule has been followed that the intent of the parties as evidenced by the proofs in the particular litigation involved is a persuasive factor. Among the numerous decisions on the subject is *Kinder* v. *LaSalle County Carbon Coal Company*, 310 Ill 126 (141 NE 537). Involved there was a conveyance of bituminous or stone coal underlying certain premises, together with the right to mine the same, and also a grant of "all the rights in or title to the oil and minerals, of every description, underlying the above and foregoing lots, tracts and parcels of land" owned by the grantor. Plaintiffs brought suit against defendants claiming by virtue of the conveyance referred to, and mesne conveyances, and asserting in substance that their rights included the surface, sand, gravel, shale, clay, and limestone. In certain portions of the land the limestone was nearly exposed, and in other places it was covered with gravel and sand. In passing on the claims of the parties the appellate court concluded that the only practicable way of mining the limestone was by quarrying it from the top. It was the position of the defendants in the case that plaintiffs owned only the agricultural soil. In affirming a decree in favor of the plaintiffs it was held that the parties had as a practical proposition placed a construction on the restrictions in question inconsistent with the claims advanced by defendants on the trial of the case. The matter in dispute related to the limestone which had apparently become of value. The following statement in the opinion is significant (pp 136, 137):

"The inference is warranted that the appellants and their predecessors did not interpret the deeds under which they claimed title as conveying, or as intended to convey, the limestone, until it had become enormously valuable. By their conduct and acts they construed their title as not embracing the sand, gravel and limestone."

.

The court further found that plaintiffs' claim of adverse possession for 20 years was supported by the proofs.

In *White* v. *Miller,* 200 NY 29 (92 NE 1065, 140 Am St Rep 618) which involved a reservation of "mines and minerals," it was held that gypsum was within the scope of the reservation on the ground that it was removable by a mining process, but that limestone, as it was a part of the surface covered only by surface soil, would be removed by quarrying. In this connection the court cited the prior decision in *Brady* v. *Smith,* 181 NY 178 (73 NE 963, 106 Am St Rep 531, 2 Ann Cas 636). It may be noted that the reservation involved in the case at bar refers to the "business of mining and removing ores and minerals" and to using the surface in connection therewith. The further provision with reference to any damage to the surface of the land resulting from caving or occupation implies that the parties did not have in mind the actual reservation of the surface soil even though it might be mineral in character.

In *Hendler* v. *Lehigh Valley R. Co.,* 209 Pa 256 (58 A 486, 103 Am St Rep 1005), the court dealt with the question whether sand was included in a reservation of coal and other minerals in, under, or upon a certain parcel of land. The deed from defendant railroad company to the plaintiff expressly reserved gravel necessary for the use of the defendant in its construction projects. The opinion of the court suggested that a specific reference to gravel was not necessary if the parties considered that it was embraced within the scope of the general reservation of minerals. After referring to the classification of sand, the following interesting comment was made (p 260):

   "But there is another, and what may be called the commercial sense in which the word mineral is used, and in which having reference to its supposed etymology of anything mined, it may be defined as any inorganic substance found in nature, having sufficient value separated from its situs as part of the earth to be mined, quarried or dug for its own sake or its own specific uses. That is the sense in which it is most commonly used in conveyances and leases of land, and in which it must be presumed that it was used by these parties in the deed in question.
\* \* \*

   "Sand might or might not be in this category. A vein of pure white quartz sand, valuable for making glass or other special use, would be within the reservation, while common mixed sand merely worth digging and removing as material for grading, would not be. The referee has found that the sand which is the subject of the present contention was of this latter character, and was taken and used not for any intrinsic value or use of its own, but as part of earth and other material to fill up the roadbed to the proper grade. So regarded and used it was not within the reservation."

Supported by citations of cases, it is said in 36 Am Jur, Mines and Minerals, § 35, pp 306, 307:

   "Limestone is not included in a grant or reservation of minerals and neither is sand, gravel, or clay."

Without discussing the matter in detail it may be noted that repeated references are made in decisions relating to the interpretation of grants or reservations of mineral rights that the inclusion of nonmetallic substances therein without express enumeration is inconsistent with the grant of the property conveyed, such minerals ordinarily forming a part of the surface soil which is recognized as belonging to the general classification of minerals. The basic thought was clearly expressed in *Staples*

v. *Young,* [1908] 1 Ir R 135, which summarized the
underlying reasoning in the following brief state-
ment (p 150):

"If the owner of the reservation, who must be the
owner if the defendant is not, were to carry away
all the sand, he would leave nothing except the debris
of grass or herbage, either growing at the time, or
decaying from previous years. We must find strong
circumstances to justify a construction which would
bring about that effect, as against one which would
give the owner of the land a farm of sandy soil,
and leave the local coal to the owner of the reserva-
tion."

We think that the trial court reached the correct
conclusion and the judgment entered is affirmed.
Appellees may have costs.

DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS,
SMITH, and O'HARA, JJ., concurred.