**Jessie HOVDEN and Marion Hovden, Plaintiffs and Appellants,**

v.

**Alan W. LIND and Bruce E. Lind, Defendants and Appellees.**

**Civ. No. 9837.**

Supreme Court of North Dakota.

Jan. 23, 1981.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiffs and appellants; argued by James D. Geyer, Dickinson.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for defendants and appellees; argued by Mark Stenehjem, Williston.

PEDERSON, Justice.

This is an appeal from a district court decision to reform the terms of a land sale contract. The court further ordered specific performance of the reformed agreement. We affirm in part and reverse in part.

On February 7, 1978, Alan and Bruce Lind (the Linds) leased for one year ranchlands belonging to Jessie and Marion Hovden (the Hovdens). The lease contract was drawn by the Linds' attorney and gave the Linds an option to purchase the rented lands. The contract required the Linds to exercise the option and make a $55,000 down payment by February 6, 1979. In August, 1978, the Linds notified the Hovdens of their election to exercise the option. In September, Marion Hovden consulted an attorney for the first time about the option. The attorney raised certain questions about the agreement as written and sought to negotiate with the Linds in an effort to eliminate defects which, he believed, made the document unenforceable. The parties failed to settle these issues by January, 1979, when the Linds, pursuant to the option, tendered the down payment.

The Linds deposited the money in a bank account on February 2, 1979, after the Hovdens refused the tender. The Hovdens then issued a notice of rescission. This attempt to rescind the option contract apparently did not end the negotiations, for in June the Hovdens made an "offer of performance" in the form of a newly drawn contract for deed which explained more clearly their views on matters which were either omitted from or ambiguous in the prior option contract. The Linds submitted their own contract for deed, adding certain clauses to the document proposed by the Hovdens. The Hovdens, in turn, accepted some slight modifications in their offer. These attempts to conclude the agreement failed though and, in July, the Hovdens served a second notice of rescission. The Linds retained new counsel and submitted another contract which, except for some minor changes, including deletion of language referring to the option contract, was identical to that in the Hovdens' offer of performance as amended.

Though the substantive positions of the parties appear not to have been in conflict, no agreement was reached, and the Hovdens subsequently commenced an action to quiet title to the property. In their complaint they alleged that the rescission was based on mistake, duress, menace, fraud, or undue influence in the making of the contract, failure of consideration, and vagueness in the option instrument.

The trial court did not make specific findings of fact or conclusions of law. In a memorandum decision, it found no evidence of duress, menace, fraud, undue influence, or failure of consideration. Nor did it conclude that the contract was unenforceably vague or incomplete. The court did find a mistake of law affecting the mineral reservation and attempted to reform the drafting of the provision. The Hovdens, on appeal, dispute the trial court's judgment only insofar as it reformed the reservation clause and ordered conveyance in accordance with it. Other issues mentioned above have not been raised before this court.

The original mineral reservation provision in the option contract was as follows:

"If the Tenants exercise this option, Owner will convey: [description of land] to Tenants as joint tenants and not as tenants in common, including conveyance from Owner to Tenants as joint tenants and not as tenants in common, of all coal in which he has a right, title or interest under the above described lands; and Owner reserves all other minerals of whatever nature and kind."

The record indicates the parties agreed to except coal from the reservation clause because strip mining of coal could destroy the Linds' surface rights. Marion Hovden testified that the Linds had "to have the coal because if they turn this land upside down it wouldn't be worth nothing. And I agreed with that."

However, in effect at the time was § 47–10–25, NDCC, which reads:

"47–10–25. Meaning of minerals in deed, grant, or conveyance of title to real property.—*In any deed, grant, or conveyance of the title to the surface of real property* executed on or after July 1, 1975, *in which all or any portion of the minerals are reserved* or excepted and thereby effectively precluded from being transferred with the surface, the *use of the word 'minerals' or the phrase 'all other minerals' or similar words or phrases of an all-inclusive nature shall be interpreted to mean only those minerals specifically named* in the deed, grant, or conveyance and their compounds and by-products." [Emphasis added.]

The trial court determined that the clause as drafted failed under the statute to carry out the intent of the parties. By failing to name specifically the minerals being reserved, the option contract in effect reserved nothing. However, the court believed that the essential requisites of a contract were present in the option contract, and that the intent of the parties with regard to the reservation of minerals was sufficiently clear to permit reformation of the defect. The court found the intent of the parties "was to reserve minerals in the form contained in [the Hovdens' tender of performance]." The tender of performance

defines mineral rights in two separate places. These provisions are as follows:

"EXCEPTING AND RESERVING unto vendors all minerals of every kind and nature, including but not limited to all oil, gas, uranium, gold, molybdenum, manganese, and all other minerals together with their compounds and by-products, except coal, in and under and that may be produced from said lands... It is the express intention of the parties hereto that the vendors are reserving all minerals of every kind and nature, except coal, whether now known or unknown, notwithstanding the purported provisions of Section 47–10–25 of the North Dakota Century Code."

and

"Upon the completion of all payments and all of the agreements to be kept and performed by Vendees in a timely matter [sic], the Vendors, their successors or assigns will cause to be delivered to the Vendees a good and sufficient warranty deed conveying the above premises to the Vendees, their successors and assigns, except as to minerals other than coal; subject however to the requirement that the Vendees shall then and there and as a precondition to such delivery of such deed, make, convey and deliver to the Vendors a good and sufficient mineral deed of special warranty, conveying to the Vendors:

'all minerals of every kind and nature, including but not limited to all oil, gas, uranium, gold, molybdenum, manganese, and all other minerals together with their compounds and by-products, except coal, in and under and that may be produced from said lands....'"

The reservation provision as reformed looks like this:

"If the Tenants exercise this option, Owner will convey: [description of land] to Tenants as joint tenants and not as tenants in common, including conveyance from Owner to Tenants as joint tenants and not as tenants in common, of all coal in which he has a right, title or interest under the above described lands; and

Owner reserves all minerals of every kind and nature, including but not limited to, all oil, gas, uranium, gold, molybdenum, manganese, and all other minerals together with their compounds and by-products, except coal, in and under and that may be produced from said lands...."

The court denied the Hovdens' attempt to rescind the contract. The memorandum sets out the court's reasons for the denial. First, rescission was not made promptly. Counsel for the Hovdens discovered the defective reservation in September, 1978, yet did not rescind until March, 1979. Second, the Hovdens "affirmed and ratified the existence of a contract" through their tender of performance, which, while clarifying certain items including mineral reservation, demonstrated the Hovdens' original contractual intent. Last, because the intent of the parties was recognizable and an enforceable agreement was reached, a contractual provision rendered meaningless by a mistake of law can be reformed according to the intent of the parties. Where reformation is possible, rescission will not usually be allowed.

The Hovdens assert that the contract as reformed fails to give the parties what they bargained for. They have argued that reformation is inappropriate because there never occurred a complete "meeting of the minds" with respect to mineral reservation, and, in the alternative, if reformation is considered the correct remedy by this court, that the contract as reformed by the trial court is no better under § 47–10–25, NDCC, than was the original option.

We consider first the argument that rescission rather than reformation is the appropriate remedy. Sections 9–09–02 and 32–04–21, NDCC, spell out the grounds upon which a party may rescind a contract or have a rescission judicially declared.

"9–09–02. Rescission—When permitted.—A party to a contract may rescind the same in the following cases only:

1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part;

3. If such consideration becomes entirely void from any cause;

4. If such consideration before it is rendered to him fails in a material respect from any cause; or

5. By consent of all of the other parties."

"32–04–21. When rescission of contract adjudged.—The rescission of a written contract may be adjudged on the application of the party aggrieved:

1. In any of the cases mentioned in section 9–09–02;

2. When the contract is unlawful for causes not apparent upon its face and when the parties were not equally in fault; or

3. When the public interest will be prejudiced by permitting it to stand."

The only statutory cause for rescission asserted is the lack of free and informed consent due to mistake. The Hovdens, in their brief, state that the parties intended reservation of all minerals but coal, and they accept as the correct statement of the law that reformation is appropriate when, inter alia, the intent of the parties can be determined. Section 32–04–17, NDCC; *Ell v. Ell*, 295 N.W.2d 143 (N.D.1980). They argue, however, that § 47–10–25, NDCC, "in effect destroys the intent of the parties, or at the least renders it ambiguous." They claim that had § 47–10–25 been known to them they would have negotiated more carefully about which minerals they wished to reserve. Specifically, they would have attempted to reach some understanding with the Linds as to whether scoria or gravel or clay were "minerals" within the meaning of the contract's reservation provision.

This court "does not favor, but will lean against, destruction of contracts because of uncertainty. If feasible, agreements will be construed to carry into effect the reasonable intention of the parties, if that can be determined." *Gift v. Ehrichs,* 284 N.W.2d 435, 441 (N.D.1979).

We fail to discern how awareness of § 47–10–25 would have affected the negotiations, except that the parties may have realized the utility of a deed back. Section 47–10–25 simply sets out, by indirection, the procedure through which minerals can be reserved. The Hovdens did not comply with that procedure but their intent is undisputed. If things like scoria, clay and gravel were important to them at the time of contracting, they ought to have negotiated about them irrespective of § 47–10–25. Rescission is unwarranted because the mistake of law did not affect the substance of the Hovdens' consent to the contract, but simply frustrated their attempt to reserve all minerals.

If the problem posed by the Hovdens—that the reservation language in the option contract does not make clear the parties' intent concerning scoria, clay, gravel and the like—would exist even in the absence of § 47–10–25, their real argument appears directed more at deficient contract formation than at causes for rescission of an acknowledged contract. Therefore we can disregard the statute for the moment and inquire whether the use of the phrase "all other minerals" is unenforceably vague or ambiguous.

We accept arguendo that the reservation of minerals is a substantive component in a land conveyance, and therefore ambiguity surrounding the parties' intent may make the purported agreement unenforceable. We conclude, however, that no ambiguity afflicts the expression "all other minerals." Though the word "minerals" has varying definitions, 58 C.J.S. Mines and Minerals § 2a, p. 17, this court, prior to the enactment of § 47–10–25, held in *Salzseider*

*v. Brunsdale,* 94 N.W.2d 502 (N.D.1959), that the term did not, in a reservation clause, include gravel. We believe this precedent applies to materials like clay and scoria also. A reasonable construction of the word "minerals" as used in a land sale contract excludes clay and scoria, as well as gravel. The rationale for similar holdings in other cases is that these substances, if they are not literally part of the surface itself, cannot be removed without damaging the surface. Reinforcing this reasoning in the instant case is parol evidence, reflecting actual intent, offered by the parties. The Linds objected to a reservation of coal specifically because mining of it foreseeably would destroy their interest in the surface. Furthermore, we concur in the notion that materials like gravel, clay and scoria are not ordinarily classified as minerals because they are not exceptionally rare and valuable. See Annotation, 95 ALR2d 843, §§ 4, 5, 6; see also, e. g., *Holland v. Dolese Company,* 540 P.2d 549 (Okl.1975). These authorities support *Salzseider* and we therefore extend the reasoning of that case to clay and scoria.[1]

Because the law supplies a reference, the word "minerals" is not fatally vague or ambiguous, and whether a "meeting of the minds" occurred over that term is simply not important. Subjective intent, or the lack of it, is not a concern when the parties manifest assent to a term capable of being given a reasonably objective meaning. *Amann v. Frederick,* 257 N.W.2d 436, 439 (N.D. 1977).

We therefore affirm the court's decision to reform the contract. Though we do not believe the reservation clause as reformed effects the true intent of the parties, the option contract with regard to minerals was sufficiently plain to preclude cancellation of the sale agreement. The court was correct in finding that a mutual mistake of law confounded the parties' intent as expressed. According to the old rule, a

---

1. We would, of course, be receptive to a showing of special circumstances negating the reasons for the above stated holding. No such showing is made here. See, e. g., Annotation, 95 ALR2d 843, § 10, pertaining to valuable clays.

mistake of law, as opposed to a mistake of fact, is not a ground for reformation. 66 Am.Jur.2d, Reformation of Instruments, § 17; 27 Am.Jur.2d, Equity, § 37. That distinction is not recognized in North Dakota, and when either type of mistake results in the parties' obvious failure to articulate their true and discoverable intent, reformation is available if justice and common sense require it.[2] Sections 9–03–12, 32–04–17, 32–04–19, NDCC; *Cokins v. Frandsen*, 141 N.W.2d 796, 799 (N.D.1966). See also, Anno., 135 ALR 1452.

█ If the mineral reservation clause in the option contract conveys a clear meaning, and suffers from a technical defect only, the remaining issue is whether the reformed agreement will execute that meaning. The trial court treated language in the tender of performance as a manifestation of intent and reformed the reservation clause accordingly. However, the court did not elaborate and we are left with the reformed clause as the only clue to the court's finding regarding reservation of minerals. Why the court selected the language it did from the tender, while disregarding other terms in the tender calling for a deed back to reserve all minerals but coal, is not clear.

We shall consider the effect of the reformed clause to be the trial court's finding on the issue of intent. The clause reserves to the Hovdens all oil, gas, uranium, gold, molybdenum and manganese. The court's attempt to reserve all minerals not specified is defeated by § 47–10–25. Thus, contrary to the clear import of the option instrument, and the trial testimony of the parties, that all minerals but coal were to be reserved, the Hovdens retain only those six specified. This was not the intent of the parties and we hold the finding, upon which

the revised clause is necessarily based, clearly erroneous. Rule 52(a), NDRCivP. The intent which governs construction of a contract is that which exists at the time of contracting. Section 9–07–03, NDCC. In the case of a written contract, intent is to be deduced from the writing alone if possible. Section 9–07–04, NDCC. Thus the court erred by modeling the reformation on the tender of performance. The option contract is the relevant document, and its mineral reservation, though legally ineffective, is clear and ought to have been the basis for reformed reservation.

In cases where all minerals are reserved or where all minerals except certain specified ones are reserved, § 47–10–25 effectively requires from the grantee a deed back of all minerals, excepting those specified minerals, if any, not reserved. The impractical alternative for the grantor who wishes to keep "all minerals" is to list in the instrument each and every mineral. Failure to include any single mineral will, under the statute, frustrate the intent to reserve that mineral. The reformed contract provides for no deed back from the Linds. Because, as we have determined, the parties intended to reserve everything but coal, the instrument of conveyance must be followed by a deed back of all minerals except coal.

Finally, the Hovdens, citing §§ 32–04–12(6) and 32–04–13, NDCC, object to the court's order of specific performance of the land sale agreement. In light of our decision, an argument based on these provisions has no merit. We conclude that an order for specific performance is appropriate. Section 32–04–20, NDCC.

The terms of the district court's reformation of the mineral reservation clause are hereby set aside. The case is remanded for

**2.** Not all mistakes of law will justify reformation of a contract. Ignorance of law must be distinguished from misapprehension of law with which both parties are familiar. Section 9–03–14(1), NDCC; *Security State Bank of Wishek v. State*, 181 N.W.2d 225 (N.D.1970). Here, the parties, before the drafting of the option agreement, were aware of Section 47–10–25, but the lawyer who drew the document believed at the time that the statute meant

specific mention of minerals was necessary for those being *transferred*, not *reserved*. Hence, coal alone was named as being the only mineral conveyed. Because we are presented with this type of mistake of law, reformation is not precluded. Where parties aware of the law fail merely in a conscientious attempt to comply with it, their intent can be deduced and used to reconstruct an effective agreement.

reformation and specific performance of the contract in accordance with this opinion.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.