Paul PERSCHKE, Gordon E. Perschke, Clementine Perschke, Robert P. Perschke, Katherine Perschke and Baukol-Noonan, Inc., Plaintiffs-Appellants,

v.

BURLINGTON NORTHERN, INC.; Oliver County, a political subdivision of the State of North Dakota; the State of North Dakota, and all persons unknown claiming any estate in or lien or encumbrance upon the property described in the Complaint, Defendants-Appellees.

Civ. No. 9971.

Supreme Court of North Dakota.

Oct. 28, 1981.

---

Eaton, Van de Streek & Ward, Minot, for plaintiffs and appellants; argued by Nevin Van de Streek, Minot.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for Burlington Northern, Inc.; argued by J. Michael Nilles, Fargo.

Myron E. Bothun, Asst. Atty. Gen., State Highway Dept., Bismarck, for State of North Dakota; no appearance.

ERICKSTAD, Chief Justice.

The above-named appellants (herein Perschke) brought a quiet title action against the above-named appellees seeking:

"to establish the ownership in themselves, either as fee owners or lessees, of and to the coal lying in and under the Southwest Quarter (SW¼) of Section Twenty-three (23), Township One Hundred Forty-three (143) North, Range Eighty-four (84) West, . . ." (the described property herein referred to as "the land").

Burlington Northern, Inc., asserting ownership to all of the coal and iron rights in the land, filed a motion for summary judgment which was granted by the trial court on January 13, 1981, declaring that Burlington Northern, Inc., "is the owner of all of the coal and iron in or under" the land. Perschke appeals to this Court from the summary judgment asserting that the trial court erred in concluding that Burlington Northern, Inc., rather than Perschke, is the owner of the coal and iron rights in the land. We affirm.

On March 12, 1906, the Northwestern Improvement Company, Burlington Northern, Inc.'s, predecessor in interest, conveyed the land to the Oliver County Ranch and Improvement Company, Perschke's predecessor in interest. The deed contained the following reservation:

"reserving and excepting from said lands such as are now known, or shall hereafter be ascertained, to contain coal or iron, and also the use of such surface ground as may be necessary for mining operations, and the right of access to such reserved and excepted coal and iron lands, for the purpose of exploring, developing and working the same; the use of such surface ground and the right of access herein reserved to be for the use and benefit of said party of the first part, its successors and its assigns of the lands hereby excepted;"

Burlington Northern, Inc., as a successor in interest to Northwestern Improvement Company's property interests in Oliver County, asserts ownership to all of the coal and iron in the land through the foregoing reservation in the 1906 deed.

Perschke, as successor in interest to Oliver County Ranch and Improvement Company's interest in the land, claims ownership of the coal and iron interests in the land on the ground that the reservation contained in the 1906 deed is void. Perschke asserts that the reservation is an attempt to reserve the coal and iron lands, surface and all, and thus is void as being repugnant to the grant itself. As a result, Perschke concludes, Northwestern Improvement Company reserved no rights to the coal and iron.

Thus, on appeal this Court is requested to construe the effect of the reservation clause in the 1906 deed.

Perschke asserts that the following use of the term "lands" in the reservation clause demonstrates that the grantor attempted to reserve the coal and iron property, surface and all, rather than just an interest in the coal and iron itself:

"Reserving and excepting from said lands such as . . . reserved and excepted coal and iron lands . . . of the lands hereby excepted."

In support of his interpretation, Perschke cites the case of *Burke v. Southern Pacific Railroad Company*, 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914), which involved the acts of Congress making land grants to the railroad and expressly excluding from such grants "all mineral lands" other than iron and coal lands. The United States Supreme Court interpreted the term "all mineral lands" as meaning the entire property interest and not just the mineral rights:

> "As has been seen, the exclusion was of 'all mineral lands.' It was not a mere reservation of minerals, but an exclusion of mineral lands, coupled with a provision that the company should receive other lands, not mineral, in lieu of them. This shows that a determination of the character of the lands, as mineral or nonmineral, was plainly contemplated." 34 S.Ct. at 913.

The Court held, in *Burke, supra,* that the issuing of a patent by the Land Department constituted a conclusive determination by the government that the conveyed lands were not mineral in character.

In *State v. Oster*, 61 N.W.2d 276 (N.D. 1953), a case involving an issue similar to that resolved in *Burke, supra,* this Court interpreted the effect of both constitutional and statutory provisions prohibiting the sale of "coal lands." This Court held that a decision of the Board of University and School Lands, that particular lands were not "coal lands" and were therefore subject to sale, constituted a final decision such that the title thereafter conveyed by patent could not be defeated by subsequent discovery of coal on the land. By implication, this Court interpreted the term "coal lands," as used within the constitutional and statutory provisions, to mean the entire property, surface and all.

In other contexts, the terms "mineral lands" and "coal and iron lands" have been construed to mean only the mineral interests involved and not the entire property interest, surface and all. *United States v. Union Pacific Railroad Company*, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957); *Carlson v. Minnesota Land & Colonization Company*, 113 Minn. 361, 129 N.W. 768 (1911).

In *Union Pacific, supra,* the United States Supreme Court, construing the term "mineral lands" under the same railroad land grant acts as were construed in *Burke, supra,* held that Congress had reserved the mineral rights in the property to which the railroads were granted a right-of-way. In construing the term the Court stated:

> "The exception of 'mineral lands,' as applied to the right of way, may have been an inept way of reserving mineral rights. The right of way certainly could not be expected to take all the detours that might be necessary were it to avoid all lands containing minerals.
>
> \*   \*   \*   \*   \*   \*
>
> "The proviso makes sense if it is read to reserve all mineral rights under the right of way, as well as to reserve mineral lands in the alternate sections of public land granted in aid of the construction of the road." 77 S.Ct. at 686.

In *Carlson, supra,* the Minnesota Supreme Court interpreted a deed containing a reservation clause, nearly identical to the one in the instant case, which reserved and excepted "coal and iron lands" from the property granted. The appellant in *Carlson, supra,* asserted, as does Perschke in the instant case, that the reservation attempted to reserve the entire coal and iron property, surface and all, and was void for being repugnant to the grant itself. The Minnesota Supreme Court disagreed with that assertion. In attempting to ascertain the intention of the parties the Court concluded that the clause constituted a valid reservation of only the coal and iron interests in the land and did not constitute an attempt to reserve the surface rights. In so holding the Court stated:

> "In this deed the use of the surface is expressly reserved for mining operations. If it was the purpose to convey title to the surface, there was no reason for reserving the use of the surface; hence title to the surface passed to the grantee. The subject of coal and iron was referred

to for some purpose. It was the common practice in that part of the state to except the minerals in grants of real estate. From all these circumstances it fairly appears that the title to the land, including the surface, was intended to pass to the grantee, with the exception of the coal and iron ore contained therein." 129 N.W. at 769–770.

The foregoing case decisions demonstrate that the term "lands" when used in conjunction with the terms "mineral" or "coal and iron" can be properly construed to mean either an entire property interest, surface and all, or merely an interest or estate in specified minerals. The appropriate construction in a particular case depends upon the circumstances involved and upon the context within which the term "lands" is used.

In construing the reservation clause of the 1906 deed we must strive to give effect to the mutual intention of the parties as it existed at the time, so far as that intent is ascertainable and lawful. Section 9–07–03, N.D.C.C. Perschke urges us to interpret the clause as reserving coal and iron property, surface and all, with the ultimate effect of voiding the entire reservation for being repugnant to the grant. We are unpersuaded that Perschke's interpretation would give effect to the mutual intention of the parties. Upon examining the reservation it is quite obvious that the grantor was attempting to at least reserve for itself all coal and iron interests in the property granted, but under Perschke's interpretation of the clause the grantor and its successors in interest would have effectively reserved nothing. That interpretation of the clause would also be contrary to the rule that reservations must be interpreted in favor of the grantor. Section 47–09–13, N.D.C.C.; *Gilbertson v. Charlson*, 301 N.W.2d 144 (N.D.1981).

In the instant case, as in *Carlson, supra*, the reservation clause expressly reserves "the use of such surface ground as may be necessary for mining operations." We agree with the Minnesota Supreme Court that if the grantor was attempting to reserve the coal and iron property, surface and all, there would be no reason for it to have reserved the use of the surface for mining operations. In construing a contract or deed we must construe all provisions together and give meaning to every sentence, phrase and word. Section 9–07–06, N.D.C.C.; *Delzer Construction Co. v. New Marian Homes Corp.*, 117 N.W.2d 851 (N.D.1962). If we were to interpret the reservation as reserving the coal and iron property, surface and all, the phrase "reserving . . . the use of such surface ground as may be necessary for mining operations" would be meaningless. Perschke explains that in addition to reserving the coal and iron property the grantor, by reserving the use of the surface ground, was attempting to insure that he had access to the reserved property. We are not convinced that Perschke's explanation gives meaning to the language which reserves use of the surface, because the clause also contains language expressly reserving a *right of access* to the reserved "coal and iron lands."

In accord with the foregoing analysis we construe the reservation clause of the 1906 deed as reserving the coal and iron interests in the property conveyed without reserving the surface interests of the property. In so construing the clause we have interpreted the term "lands" as meaning "interests." We believe that our construction gives the term "lands" consistency throughout the clause, gives meaning to every sentence and phrase of the clause, and correctly ascertains the intention of the parties to the deed at the time of its execution.

In accordance with the foregoing opinion the summary judgment of the district court of Oliver County is hereby affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.