**Irvin LEE as Trustee of the John O. Lee Family Mineral Trust, Plaintiff and Appellant,**

v.

**Mrs. Helen FRANK and Theodore Wee, Defendants and Appellees.**

**Civ. No. 10035.**

Supreme Court of North Dakota.

Dec. 22, 1981.

Pringle & Herigstad, Minot, for plaintiff and appellant; argued by Richard P. Olson, Minot.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees; argued by Jane Fleck Romanov, Bismarck.

PEDERSON, Justice.

This appeal requires this court to determine what Theodore and Angela Wee meant when, on January 5, 1945, they signed a warranty deed which conveyed in fee simple an 80-acre parcel of land in Ward County to Matt J. Lee:

"... excepting and reserving, however, from these presents all ores and minerals beneath the surface of the above described premises, with the right to mine for

and extract the same, provided that in the exercise of such mining right the surface thereof shall not be disturbed or interfered with and in nowise damaged . . . .

Successors to the rights of Matt J. Lee brought this action to quiet title (Ch. 32–17, NDCC) to "an interest in the oil, gas and other hydrocarbons except coal." The trial court ruled in favor of the successors to the rights of Theodore and Angela Wee, holding that "all of the oil, gas, coal and other hydrocarbons which may be found beneath the surface" were effectively reserved. We affirm.

> "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Holmes, J., in *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918).

In elementary school classes in general science we are taught to identify minerals as they occur in nature, usually solid, homogeneous substances like ore or coal, or synthetic substances, having the chemical composition and crystaline form and other properties of a naturally occurring mineral, but made in the laboratory. It is seldom mentioned that one of the properties of a mineral is that often, when newly discovered in valuable quantities, it creates lawsuits.

It is a general rule, from which we start, that a reservation of "minerals" in a written document indicates an intention to reserve all substances that qualify as "minerals." Ordinarily then, the substance must appear in nature as a mineral and not merely be an element capable of being synthesized in a laboratory into a mineral. Before we restrict the definition further, we must find qualifying circumstances, qualifying words used, or a qualifying context. See Anno: "Minerals"—Oil and Gas, 37 A.L.R.2d 1440; "Other Minerals" as Including Coal, Metals, 59 A.L.R.3d 1146; Oil and Gas Rights as Including Oil Shale, 61 A.L.R.3d 1109.

We do not limit our search for the qualifying factors in the words of the document involved, but must consider the custom and usage, applicable statutes, governing precedent announced by the courts, and common sense.

Accordingly we have said that, under the circumstances, we do not apply the classification of matter as animal, vegetable or mineral in a manner that permits a grantor to defeat the entire grant by a reservation of a "very substantial part of the soil itself and exclude . . . such purely organic substances as oil, gas and coal." *See Salzseider v. Brunsdale*, 94 N.W.2d 502, 503 (N.D. 1959), and *Kadrmas v. Sauvageau*, 188 N.W.2d 753 (N.D.1971). This is a rule that ordinarily is applied retroactively.

In the instant case the parties apparently concede that a reservation of the coal was accomplished by Mr. Wee, and therefore we can limit our analysis to "oil, gas and other hydrocarbons except coal." Such cases as *Adams County v. Smith*, 74 N.D. 621, 23 N.W.2d 873 (1946), have therefore no direct bearing upon this decision. Rules of construction applicable to statutes are often the same as those applicable to other writings, such as contracts and deeds. Most of the cases we will discuss furnish only indirect support for the result we reach in this case.

In *State v. Amerada Petroleum Corp.*, 78 N.D. 247, 49 N.W.2d 14, 15 (1951), we said "oil and natural gas are generally classified as minerals." The case of *MacMaster v. Onstad*, 86 N.W.2d 36 (N.D.1957), concluded that the word "mine" is commonly used to refer to drilling operations for oil and gas. *See also, Evangelical Lutheran Church v. Stanolind Oil and Gas Company*, 251 F.2d 412 (8th Cir. 1958).

In a case which held that the word "minerals" includes "coal," this court, in *Abbey v. State*, 202 N.W.2d 844 (N.D.1972), examined the rule of *stare decisis* and concluded, obviously, that cases which are distinguishable are not binding precedent. That case also explained how interpretations are restricted by the doctrine of *ejusdem generis* where a particular word is followed by general words.

Another case which concluded that the words "oil, gas and other minerals" includes coal is *Christman v. Emineth*, 212 N.W.2d 543 (N.D.1973). That case illustrates why the doctrine of *ejusdem generis*[1] does not exclude coal when the general term, "other minerals," is preceded by the specific words, "oil and gas." *See also, Haag v. State, Board of University and School Lands*, 219 N.W.2d 121 (N.D.1974), and *Permann v. Knife River Coal Mining Co.*, 180 N.W.2d 146 (N.D.1970).

Again, in *Olson v. Dillerud*, 226 N.W.2d 363 (N.D.1975), this court held that a deed which reserved "oil, gas and other minerals" was sufficient to include coal. We also refused to say that the holding in *Christman v. Emineth, supra*, was prospective only. In *Reiss v. Rummel*, 232 N.W.2d 40 (N.D.1975), we discussed the distinction between reservations, exceptions, and conveyances insofar as the application of a statute which required that the minerals being conveyed be specifically named.

All of these cases, and many others, have been thoroughly analyzed by experts. *See, e.g.*, Fleck, *Severed Mineral Interests*, 51 N.D.L.Rev. 369; Beck, *"And Other Minerals" as Interpreted by the North Dakota Supreme Court*, 52 N.D.L.Rev. 633; and Reeves, *The Meaning of the Word "Minerals*,*"* 54 N.D.L.Rev. 419. None of the cases and none of the suggestions from the authorities give us a rule-of-thumb formula with an easy answer to the question in the instant case.

We have not overlooked our most recent decisions: *Perschke v. Burlington Northern, Inc.*, 311 N.W.2d 564 (N.D.1981); *Hovden v. Lind*, 301 N.W.2d 374 (N.D.1981); and *McDonald v. Antelope Land & Cattle Co.*, 294 N.W.2d 391 (N.D.1980). These cases are significant to this discussion, primarily insofar as they continue to illustrate the application of the general rules. *McDonald* involved the application of qualifying language, but the specific words interpreted in

that case are not present in the instant case. *Hovden* involved the application of a 1975 statute which obviously has no application to the 1945 conveyance from Wee to Lee. *Perschke* involved words in a reservation significantly different than we have in this case. All three cases involved interpretations of words in a context that is distinguishable, yet the same general rules of construction apply. Of interest in *Hovden* is the statement that the word "minerals" is not ambiguous. "Subjective intent, or the lack of it, is not a concern when the parties manifest assent to a term capable of being given a reasonably objective meaning." *Hovden v. Lind, supra*, 301 N.W.2d at 378, citing *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977).

 In this case there was no offer of evidence as to the subjective intent of Wee or Lee at the time of the 1945 transaction. We are advised only that Wee was a miner from Butte, Montana, and that coal was known to exist in the area of the land conveyed. Although ordinarily the construction of a written contract to determine its legal effect is a question of law for the court to decide, *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894, 896 (N.D. 1978),

> "the interpretation of the parties' intentions as to the meaning of certain words or phrases in a written contract may involve either a question of law or a question of fact depending on whether or not the interpretation requires the use of extrinsic evidence. If the parties' intentions in a written contract can be ascertained from the writing alone, then the interpretation of the contract is a question of law for the court to decide." *Metcalf v. Security Intern. Ins. Co.*, 261 N.W.2d 795, 799 (N.D.1978).

There are some statutes that we ought to look at to see whether or not they are a part of the qualifying context in which the 1945 reservation was made. As we said in

---

1. The term *"ejusdem generis"* is more limited than the rule or maxim of *"noscitur a sociis"* which is to the effect that the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it. *See* Black's Law Dictionary, Fifth Ed.; 82 C.J.S. Statutes §§ 331 and 332; 73 Am.Jur.2d Statutes §§ 213–216.

*McDonald,* reservations made before limiting statutes were enacted (§§ 47–10–24 and 47–10–25, NDCC) are not subject thereto. In *Christman* we said that §§ 47–10–21 and 47–10–22, NDCC, which made certain reservations invalid, are unconstitutional.

Statutes that appear readily to have some application are: § 47–09–11,[2] which generally makes contract law applicable to deeds; § 47–09–13,[3] which requires that reservations in deeds be interpreted in favor of the grantor; § 9–07–02,[4] which says the language in the document is to govern if it is clear and explicit and does not involve an absurdity; § 9–07–12,[5] which allows reference to background matters; and § 9–07–21,[6] which is a modified statutory adoption of the doctrine of *ejusdem generis,* to wit: when things are mentioned expressly, all other things of the same class are deemed to be excluded.

Under the guidelines which we have discussed, we examine the words in the 1945 deed from Wee to Lee:

"... excepting and reserving ... all ores and minerals beneath the surface ... with the right to mine for and extract the same, provided that in the exercise of such mining right the surface ... shall not be disturbed or interfered with and in nowise damaged ...."

None of the briefing nor argument made has urged that we make any distinction between the words "excepting" and "reserving." We move on to the critical words "all ores and minerals," keeping in mind that our only question is (conceding that coal is included): Do the words "ores and minerals" include "oil, gas and other hydrocarbons"?

We find that this court acknowledged the existence of exceptions, using the words "ores and minerals" long before the 1945 transaction in this case. In *Beulah Coal Mining Co. v. Heihn,* 46 N.D. 646, 180 N.W. 787, 789 (1920), Chief Justice Christianson wrote for the majority:

"Contracts excepting ores and minerals from grants of land with a reservation of the right to enter upon the portion thereof granted are in accordance with long-established usage and have been invariably held by the courts to be valid, and not to be contrary to, but in harmony with, public policy."

There are undoubtedly more such cases, however our brief research disclosed only one additional reported case in which the specific words "ores and minerals" were used. The Supreme Court of Michigan, in a dispute over the ownership of sand and gravel, held that a reservation in a warranty deed of "ores and minerals" did not include sand and gravel. *Fisher v. Keweenaw Land Association,* 371 Mich. 575, 124 N.W.2d 784 (1963). We find the reasoning persuasive and in accord with the logic expressed by this court in *Salzseider v. Brunsdale, supra.* However, when the Michigan court, without any explanation, volunteered the advice that the phrase "ores and miner-

2. "47–09–11. Interpretation of grants.—Grants shall be interpreted in like manner with contracts in general except so far as is otherwise provided by this chapter. If the operative words of a grant are doubtful, recourse may be had to its recitals to assist the construction, and if several parts of a grant are absolutely irreconcilable, the former part shall prevail. A clear and distinct limitation in a grant is not controlled by other words less clear and distinct."

3. "47–09–13. Grant shall be interpreted in favor of grantee—Exceptions.—A grant shall be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor."

4. "9–07–02. Language of contract governs if clear.—The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."

5. "9–07–12. Contract explained by reference to circumstances.—A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

6. "9–07–21. Things incidental to contract—When and when not implied.—All things that in law or usage are considered as incidental to a contract or as necessary to carry it into effect are implied therefrom, unless some of them are mentioned expressly therein. In such case, all other things of the same class are deemed to be excluded."

als" is limited to "metallic ores or metal bearing minerals," its opinion lost its persuasiveness. If that were a rule applicable to this case, the apparent agreement that "ores and minerals" included "coal" would be invalid.

■ We conclude that when Wee excepted and reserved "all ores and minerals," he reserved "all" metallic minerals and "all" metallic ores, plus "all" non-metallic solid, liquid or gaseous minerals whether known or later discovered (except insofar as it may be interpreted in a manner to defeat the conveyance of the soil itself). There are no words of limitation in the reservation clause that lead to any other conclusion. There was no statute, such as the present § 47–10–25, NDCC, in effect at the time of the conveyance here under consideration, which imposed any limitation on reservations of "all" minerals.[7] The parties have pointed out no qualifying language in the reservation, no qualifying applicable statute, and no qualifying custom, usage, circumstance or context. The reservation was, accordingly, properly interpreted in favor of the grantor as required by § 47–09–13, NDCC.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

7. See also recent statutory definitions of "minerals" in § 38–11–01(2), NDCC, and "other minerals," including "ores," in § 38–14.1–02(10), NDCC.