Anthony G. RIDDLESPERGER et al., Appellants,

v.

CRESLENN RANCH COMPANY et al., Appellees.

No. 1295.

Court of Civil Appeals of Texas, Tyler.

Feb. 7, 1980.

Rehearing Denied March 14, 1980.

Willis D. Moore, Moore, Bateman & George, Athens, Stephen E. Stein, Dallas, Fred A. Lange, Houston, for appellants.

Fred N. Diem, Kilgore & Kilgore, Dallas, Guy L. Nevill, James W. McCartney, Ben H. Rice, III, Vinson & Elkins, Houston, for appellees.

MOORE, Justice.

This is an appeal from a summary judgment. Appellant, Anthony G. Riddlesperger and others similarly situated, instituted this declaratory judgment action against appellees, Creslenn Ranch Company and the Dow Chemical Company, seeking a judgment declaring appellants to be the owners of the coal and lignite in and under a 261.-75-acre tract of land situated in Henderson County, Texas. Appellants alleged that they acquired title to the coal and lignite under the terms of a 1958 deed in which their predecessors in title made the following mineral reservation:

> . . . all of the oil, gas, uranium, and other minerals and gravel in, on and under said land, together with full rights of ingress and egress to, from and over said land, or any part thereof, for the purpose of exploring for mining, producing, developing or removing any or all of said minerals on, under or from any part of said land . . .

Appellants contend that even though the reservation did not specifically mention coal and lignite, those substances are minerals and are therefore reserved to their predecessors in title under the clause "other minerals." Appellees, Creslenn Ranch Company, the owner of the surface estate, and its coal and lignite lessee, Dow Chemical Company, answered with a general denial. Thereafter, appellants Riddlesperger and others filed a motion for summary judgment under Rule 166–A of the Texas Rules of Civil Procedure, alleging that under the reservation in the deed they should be held to own the title to the coal and lignite as a matter of law. Appellees also filed a motion for summary judgment, alleging that the reservation in the 1958 deed should not be construed to include the coal and lignite. They contended that the parties did not contemplate the destruction of the surface estate and therefore title to the coal and lignite remains in the appellees' predecessor in title, because the undisputed summary judgment proof showed that (1) the coal and lignite were not specifically reserved; (2) the minerals were so near the surface of the land that they could only be produced or recovered by strip mining; and (3) there was nothing in the 1958 deed indicating that the parties intended that the grantor could extract the coal and lignite by strip-mining methods. Relying on the decision in *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971) and *Reed v. Wylie*, 554 S.W.2d 169 (Tex. 1977), appellee Creslenn Ranch, the present owner of the surface estate, and its coal and lignite lessee, Dow Chemical, contended that they should be declared the owners of the coal and lignite. After a hearing, the trial court denied appellants' motion for summary judgment and entered a summary judgment in favor of appellees, Creslenn Ranch and Dow Chemical Company, thereby declaring Creslenn Ranch and Dow Chemical to be the fee simple owners of the coal and lignite on and under the 261.75-acre tract in question. Appellants, Antho-

ny G. Riddlesperger and others, the mineral estate owners, perfected this appeal.

We affirm.

It is conceded by both parties that there is no genuine issue as to any material fact. In addition to the facts hereinabove delineated, the undisputed summary judgment proof shows that on December 11, 1958, Mary Flagg and Pearl Gentry conveyed the 261.75-acre tract in question to T. H. Shipp by a warranty deed. The deed reserved to Mrs. Flagg and Mrs. Gentry the above described mineral estate. Thereafter appellants acquired the reserved mineral interest held by Mrs. Flagg and Mrs. Gentry; appellee, Creslenn Ranch Company, subsequently acquired the surface estate interest held by Mr. Shipp. When Creslenn Ranch Company later executed a coal and lignite lease to the Dow Chemical Company, appellants filed this suit.

The location of the coal and lignite under the 261.75-acre tract in question is not in dispute. The affidavit testimony of Winston M. Sahinen, a registered mining engineer, shows that extensive core testing was done to locate the depth and areal extent of the lignite. It was found to be located in two seams or layers at a depth ranging from twenty feet to fifty-eight feet below the surface of the land. The seams are separated by an interval of approximately three to six feet. The thickness of the lignite in these seams vary from five to ten feet. Consequently, the summary judgment proof establishes that at least part of the lignite is so near the surface that it cannot be removed without destroying a substantial part of the surface estate. Sahinen further testified that sixty percent of the lignite underlying the land in question is directly overlain by loose sand and gravel. The remaining lignite is directly overlain by marginally suitable roof material in the form of dark gray claystone. Only the lignite overlain by the claystone is capable of being mined by underground mining methods. In 1958, such a method of mining in that area would recover only thirty-four percent of the lignite. However, an operator who chose to surface mine the same

area would recover eighty-five percent of the lignite. In the entire area, an operator, who in 1958, surface mined this property would recover eighty-five percent of the lignite. In comparison, an operator who elected to conduct underground mining operations in 1958 could do so only in the area containing marginally suitable roof material and would recover only fourteen percent of the total lignite underlying the land in question. Consequently, in 1958, seventy-one percent of the lignite underlying this tract could only have been recovered by surface mining.

Appellants assert under their first point of error that the trial court erred in denying their motion for summary judgment and in granting appellees' motion for summary judgment, because there were no facts at issue and the inclusion of "gravel" and "uranium" as reserved substances in the 1958 deed "affirmatively and fairly expressed" the intention of the parties that the utility of the surface for agricultural or grazing purposes would be destroyed or substantially impaired by the removal of the reserved substances. Appellants say that it is common knowledge that gravel is mined by surface-mining methods and the summary judgment proof shows that uranium is also mined by the same method. Hence, they argue that since gravel and uranium are substances that must be mined by methods that will destroy the surface, the deed affirmatively shows that the parties intended that the surface estate could be destroyed by the removal of all reserved substances, including coal and lignite. Therefore they contend that they own the title to the coal and lignite. Under the ruling made by our supreme court in *Acker v. Guinn* and *Reed v. Wiley*, we have concluded that appellants' contention is without merit and must therefore be overruled.

Although coal and lignite were not specifically reserved in the 1958 deed, it is generally recognized that such substances are minerals. In the instant case, coal and lignite would ordinarily be reserved to the mineral interest owners by virtue of the language contained in the reservation re-

serving "other minerals." *Reed v. Wylie*, supra, at 172. The question is whether the parties, at the time of the execution of the 1958 deed containing the reservation of "other minerals," intended to include mineral substances lying so near the surface that the extraction thereof would result in a destruction of the surface estate.

In *Acker v. Guinn*, the question was whether an interest in iron ore passed to the grantees in a 1941 deed which conveyed "an undivided ½ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from" a certain tract of land. The iron ore deposits in the area ranged in depth from outcroping on the surface to as much as fifty feet below surface, and its extraction would have resulted in the destruction of the surface estate. The court, after holding that iron ore was a mineral, then proceeded to construe the 1941 deed containing the mineral reservation. The court wrote that a general intent of the parties rather than a specific intent should be the inquiry where the instrument itself expresses no specific intent with regard to the removal of near surface minerals. The general intent of a grant or reservation of minerals by a fee owner was to create an estate in the mineral owner in the valuable substances usually removed from the ground by means of wells or mine shafts but not by a method that would destroy or deplete the surface. The court then declared that the following rule was to be applied in determining whether an interest in the iron ore was conveyed by the deed in that case: "[u]nless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of 'minerals' or 'mineral rights' should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate." The court went on to explain that although a grant or reservation of minerals by the fee owner affects a horizonal severance and the creation of two separate and distinct estates, it is not ordinarily contemplated by the parties at the time of the execution of the grant or reservation that the utility of the surface for agricultural or grazing pur-

poses will be destroyed or substantially impaired. In essence, the court in that case held that unless the contrary intention is affirmatively and fairly expressed, those substances that can be extracted only by the substantial destruction of the surface are owned by the surface owner and are not included in the grant or reservation. The same principle was reaffirmed in *Reed v. Wylie*, supra, wherein the court stated: "[t]he *substance* which can be extracted only by substantial destruction of the surface is *owned* by the surface owner." (Emphasis supplied)

In the instant case, the undisputed summary judgment proof shows that as of the date of the 1958 deed, if the coal and lignite situated under the tract in question had been extracted, the extraction would necessarily have consumed or depleted the surface estate. Because the 1958 reservation did not mention coal or lignite and nothing in the instrument shows that the grantor expressly reserved all minerals, including those minerals that must be produced by open pit or strip mining, the deed shows no specific intent of the parties to include coal and lignite as reserved substances. Also, because it is not expected that the parties to the instrument would have intended the destruction of the surface by the mineral owner for coal and lignite in the absence of an expression of that intention, their use of the phrase "other minerals" in the instrument is not construed to include the near surface substance. *Reed v. Wylie*, supra. Upon construing the instrument in this manner, the contested substance—at whatever depth—is not a "mineral," and the title to the contested substance remains in the surface owner. Upon applying the foregoing rules to the facts of this particular case, we hold that the 1958 mineral reservation did not include any of the coal and lignite situated on or under the land in question, and therefore the trial court properly disposed of the cause by rendering a summary judgment in favor of appellees, the surface owners.

Appellants contend that the summary judgment cannot be sustained on the basis

of the holdings in *Acker* and *Reed*, because the reservation in the instant case is substantially different from the reservations in those cases. They point out that the reservation in this case specifically reserves two substances, gravel and uranium, that can only be removed by substantially impairing or destroying the utility of the surface for agricultural or grazing purposes. It is their contention that since the mineral estate owners specifically reserved uranium and gravel, the recovery of which would have resulted in the destruction of the surface, the general intent of the parties must have been that the mineral estate owners would be permitted to destroy the surface estate in the extraction of any "other minerals," including coal and lignite. Therefore, they say that the holdings in *Acker* and *Reed* are not applicable to the facts and may not be utilized to deprive them of the title to the coal and lignite. We are not in accord with this proposition.

■ Appellants argue first that the reservation of gravel shows a general intent to allow the mineral owner to destroy the surface. Appellants state that it is common knowledge that the substance known as "gravel" can only be recovered by pit or strip-mining methods. Consequently, they take the position that since the title to the gravel, which could only be extracted by strip mining, was specifically reserved to the grantor, the parties fairly and affirmatively expressed an intent to permit other mineral substances such as coal and lignite to be extracted by pit- or strip-mining methods. We do not agree. Gravel is not a mineral within the ordinary and natural meaning of the word. *Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994, 997 (1949); *San Jacinto Co. v. Southwestern Bell Telephone Co.,* 426 S.W.2d 338, 346 (Tex.Civ.App.— Houston [14th Dist.] 1968, writ ref'd n. r. e.), cert. denied, 393 U.S. 1027, 89 S.Ct. 622, 21 L.Ed.2d 570 (1969); *Watkins v. Certain-Teed Products, Corp.,* 231 S.W.2d 981, 985 (Tex.Civ.App.—Amarillo 1950, no writ). Inasmuch as gravel is not generally considered a mineral, the reservation of this particular substance does not shed any light on whether the parties intended to include or exclude a particular mineral substance within the reservation of "other minerals."

Appellants make the same argument with regard to the intent of the parties based on the specific reservation of the mineral, uranium. They take the position that if uranium is a substance that must be strip mined by methods that will destroy the surface, and if uranium is named as a reserved substance, then the deed shows on its face that the parties intended that the surface could be destroyed by mining an unnamed mineral substance, such as coal and lignite. In an effort to establish that at the time of the execution of the 1958 deed, the parties intended that the destruction of the surface would not be a barrier to the grantor's title to the coal and lignite, appellants offered summary judgment proof showing that uranium sometimes was found to outcrop in the general area where the land in question was situated. They also offered summary judgment proof that the only known method used in Texas in extracting uranium in 1958 was by strip-mining methods. No summary judgment proof was offered showing that the land in question contained uranium lying so near the surface that it could only be extracted by strip-mining methods. Thus, appellants' proof fails to support their contention that the specific reservation of uranium shows that the parties intended that the surface could be destroyed in the extraction of any other mineral substance.

Even if appellants' summary judgment proof shows that uranium must be produced by surface-destructive methods, we do not believe that this is a material issue in this case.

In this case, as in *Acker v. Guinn* and *Reed v. Wylie*, the court is confronted with the problem of construing a written instrument in order to determine title to the contested mineral substance. This, of course, involves an inquiry into the intent of the parties at the time the instrument was executed. Once the question of title is settled, the right or lack of right to extract the contested substances by pit or strip mining will naturally follow.

In the instant case it is clear that the parties to the 1958 deed intended that the title to the uranium was to remain in the grantor since the parties specifically named that substance as being reserved to the grantor. It therefore follows that the grantor, as the owner of the title, would have the right to go on the land and recover the uranium in any manner deemed necessary, including pit or strip mining. It does not necessarily follow, however, that merely because the parties intended for the title to the uranium to remain in the grantor that they intended that the title to other unnamed minerals was also to remain in the grantor. In order to determine the intent of the parties with regard to whether they intended for the title to other unnamed mineral substances to remain in the grantor by virtue of the "other minerals" reservation, it becomes necessary to construe the 1958 deed in accordance with the principles laid down in *Acker* and *Reed*. The inquiry thus becomes whether the parties intended to include or exclude title to the particular substance in question. What they intended with regard to some specifically named substance or what legal rights may have accrued to the grantor as the holder of the title to a named substance, would not be indicative of what the parties intended with regard to the passage of title to the particular substance in question. The title to the contested substance must be determined in accordance with the rules of construction laid down in *Acker* and *Reed*. Upon applying those rules, it is clear, as we have heretofore pointed out, that the 1958 deed should not be construed as reserving title to the coal and lignite. For the foregoing reasons, we cannot agree with appellants' contention that the specific reservation of uranium was sufficient to fairly and affirmatively express an intention to reserve to the grantor an interest in any mineral substance to be found at or near the surface of the land.

Under their second and final point of error, appellants contend that the trial court erred in denying their motion for summary judgment and in granting appellees' motion for summary judgment, because there were no facts at issue and the inclusion of "uranium" as a reserved mineral in the 1958 deed reserved all minerals, including coal and lignite.

In support of the foregoing proposition, appellants rely on the holding in *Cain v. Neumann*, 316 S.W.2d 915 (Tex.Civ.App.— San Antonio 1958, no writ). In that case the court held that uranium was included under a lease reciting the conveyance of "all of the oil, gas, coal and other minerals." Appellants argue that *Cain* stands for the proposition that an instrument reserving oil, gas, a dissimilar mineral, and other minerals reserve all minerals, whether named or not. Consequently, they contend that since the instrument in the present case reserves oil, gas, a dissimilar mineral (uranium), and other minerals, the reservation should be construed to reserve all minerals including coal and lignite. While the holding in *Cain* seems to support appellants' contention, it is noted that the case was decided long before the decisions of our supreme court in *Acker* and *Reed*. In discussing *Cain*, the *Acker* court stated that the question was not briefed by the appellees, who were contending that the lease did not cover uranium, and it did not appear that the case involved any question of open-pit mining. *Acker*, supra, at 351.

In view of the distinction pointed out by the *Acker* court, and in view of the substantial changes made in this area of the law by the holdings in *Acker* and *Reed*, we do not consider *Cain* to be authoritative or controlling under the facts presented here. Appellants' second point of error is overruled.

The judgment of the trial court is affirmed.