L. DERRAL CHRISTENSEN AND BARBARA CHRISTEN-SEN, HIS WIFE, APPELLANTS, v. CHROMALLOY AMERICAN CORPORATION, A DELAWARE CORPO-RATION, RESPONDENT.

No. 13310

January 20, 1983                    656 P.2d 844

*Puccinelli & Puccinelli,* Elko; *Vargas & Bartlett,* and *William A. Prezant,* Reno, for Appellants.

*Hoy, Miller & Murphy,* and *Hill, Cassas, De Lipkau and Erwin,* Reno; *Puritt and Gushee,* and *F. Alan Fletcher,* Salt Lake City, Utah, for Respondent.

## OPINION

*Per Curiam:*

In 1945, the partnership of Wilkins and Wunderlich purchased extensive land holdings owned by U.C. Land and Cattle Company. On May 24, 1947, the partnership was dissolved and a portion of the land known as "Winecup Ranch" was conveyed to Russell Wilkins. The deed to the Winecup Ranch contained the following mineral reservation clause:

> RESERVING HOWEVER to the grantors their heirs, administrators, executors, assigns or successors all right, title and interest to coal, oil, gas and other minerals of every kind and nature whatsoever existing upon beneath the surface of, or within said lands, including the right to the use of so much of the surface thereof as may be required in prospecting for, in locating developing, producing and transporting said coal oil, gas or minerals and any of their by-products thereof.

In June, 1978, appellants, Derral and Barbara Christensen, became the owners of Winecup Ranch. Appellants' deed to the ranch specifically excepted "any and all mineral rights." The mineral rights to Winecup Ranch are presently owned by AZL Minerals, Inc., Superior Oil Company, and Patsy R. Grube; these rights have been leased to respondent Chromalloy American Corporation.

This litigation began when respondent filed suit against appellants, seeking a declaratory judgment regarding its rights

under the mineral reservation. It also requested an injunction restraining appellants from interfering with its open-pit mining of barite on the Winecup Ranch. Appellants filed an answer and counterclaim, alleging that they owned the surface minerals on the land and that respondent was trespassing. They further alleged respondent's mining operations were destroying their ranch land, and they sought damages for trespass, conversion of the barite, negligence and nuisance. In addition, appellants moved for a preliminary injunction to halt the open-pit mining of barite on the Winecup Ranch. The district court entered an order denying appellants' motion for a preliminary injunction, and this appeal followed.

On appeal, appellants assert the district court erred in denying their motion for a preliminary injunction. Thus, we must decide whether they have shown a reasonable probability of success on the merits, and also whether respondent's conduct, if allowed to continue, will result in irreparable harm for which compensatory damages represent an inadequate remedy. Number One Rent-A-Car v. Ramada Inns, 94 Nev. 779, 587 P.2d 1329 (1978). In regard to these concerns, appellants contend the district court erred in concluding that the mineral reservation clause in controversy was "clear, definite, unequivocal and unambiguous." We agree.

In Acker v. Guinn, 464 S.W.2d 348 (Tex. 1971), the holder of certain mineral rights brought an action for declaratory judgment to determine which party was the legal owner of iron ore surface minerals. The deed at issue purported to convey "an undivided ½ interest in and to all of the oil, gas, and other minerals in and under, and that may be produced from" the land in question.

In construing the clause "other minerals" in the deed, the court considered whether the reservation clause was intended to include minerals that were only recoverable by open-pit mining. The court ultimately concluded that surface minerals which were subject to extraction by open-pit mining belonged to the surface estate owner and not the lessee. In its holding, the court stated:

> The parties to a mineral lease or deed usually think of the mineral estate as including valuable substances that are removed from the ground by means of wells or mine shafts. This estate is dominant, of course, and its owner is entitled to make reasonable use of the surface for the production of his minerals. It is not ordinarily contemplated, however, that the utility of the surface for agricultural or

grazing purposes will be destroyed or substantially impaired. Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of "minerals" or "mineral rights" should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate. See Clark, Uranium Problems, 18 Tex.B.J. 505.

*Id.* at 352 (footnote omitted). *See also,* Kuntz, *The Law Relating to Oil and Gas in Wyoming,* 3 Wyo. L.J. 107 (1948).

In Reed v. Wylie, 597 S.W.2d 743 (Tex. 1980), the Texas Supreme Court further delineated the *Acker* decision. The court, in *Reed,* found that a mineral reservation clause, reserving an interest in "oil, gas and other minerals" did not include surface minerals which were necessarily mined by methods that destroyed the surface estate. The court stated that if "the deposit lies near the surface, the substance will not be granted or retained as a mineral if it is shown that any reasonable method of production would destroy or deplete the surface." *Id.* at 747.

Finally, in Riddlesperger v. Creslenn Ranch Co., 595 S.W.2d 193 (Tex.Civ.App. 1980), the court interpreted the following mineral reservation:

all of the oil, gas, uranium, and other minerals and gravel in, on and under said land, together with full rights of ingress and egress to, from and over said land, or any part thereof, for the purpose of exploring for mining, producing, developing or removing any or all of said minerals on, under or from any part of said land. . . .

The court held that at the time the parties executed the deed containing the reservation of "other minerals," they did not intend to include mineral substances lying so near the surface that their extraction would result in a destruction of the surface estate. *Id.* at 196. The court found its construction of the reservation impelled the conclusion that the near-surface substances in question were not "minerals" and title to the contested substances remained with the surface owner. *Id.* In reaching its decision, the court relied on *Acker,* and *Reed.*

Under the rationale enunciated in *Acker, Reed,* and *Riddlesperger,* title to surface or subsurface minerals vests in the surface estate owner unless the mineral estate owner can remove the minerals in question by methods of extraction which will not consume, deplete or destroy the surface estate.

Respondent claims the mineral reservation clause at issue

clearly establishes the original grantor's intent to allow unlimited use of the surface estate in order to extract the barite. In support of its position, respondent relies on New Mexico and Arizona Land Company v. Elkins, 137 F.Supp. 767 (D.N.M. 1956), wherein the federal district court attempted to interpret and apply New Mexico law in a diversity case involving a mineral reservation.

In *Elkins,* the court construed a mineral reservation clause which applied to "all oil, gas and minerals underlying or appurtenant to said lands." The defendants in *Elkins* argued that it was not the intention of the original grantors to reserve the then unknown substances of uranium and thorium in their mineral deed. Further, defendants argued that these surface minerals would have to be strip mined, thus making their land unfit for ranching and agricultural purposes. The court rejected the defendants' contentions and held that extrinsic evidence was not admissible "to show the circumstances surrounding the execution of the deeds in question, or the intention of the parties at that time." *Id.* at 769. In his opinion, the district judge stated: "I am of the considered opinion extrinsic evidence as to the intentions of the parties to the deeds in question is not admissible in this case, inasmuch as the language of the reservation is clear, definite and unequivocal. The phrase 'all oil, gas and minerals' is a phrase well known to scriveners of deeds, well known in the mining industry, and well known to the average person." *Id.* at 770.

The *Elkins* decision represents a minority view, which we do not find persuasive. In point of fact, the precedential value of the *Elkins* case is questionable in the wake of State Ex Rel. State Highway Commission v. Trujillo, 487 P.2d 122 (N.M. 1971).[1]

In *Trujillo,* the court stated that generally clay, sand and gravel are deemed to be minerals, but went on to note certain exceptions to this general rule:

---

[1]In the unpublished decision of New Mexico and Arizona Land Company v. Elkins, No. 74-235 (D.N.M. Dec. 3, 1974), the federal district court rejected the parties' contention that the first *Elkins* case governed the controversy, and found that the more recent *Trujillo* holding was controlling. The *Elkins II* case involved open-pit mining of limestone, which necessarily destroyed the surface estate. After considering the holding in *Trujillo,* the court, in *Elkins II,* held that limestone was not a mineral under the reservation clause at issue. The court stated:

The removal of the limestone destroys the surface and it cannot be removed without destruction of the surface. Following the other general lines of authority on this point, the reservation claimed by the plaintiff under this conveyance would have destroyed the thing that they were conveying to the defendants' predecessors in title.

Slip op. at 14.

There are, however, important considerations which cause exceptions to this general rule. Among them are that materials which possess no exceptional characteristics or value which distinguish them from the surrounding soil are not likely to be recognized as "minerals" in the sense of such conveyances; that materials which form part of the surface are also not legally recognizable as minerals, nor are those which cannot be obtained without a destruction of the surface, in the absence of extremely clear indication that they are to be so recognized and that the usual considerations of avoiding damage to the surface estate are to be deliberately disregarded; * * *.

*Id.* at 124-125 (quoting 95 A.L.R.2d 843 (1964)).

Case authority is replete with problems of interpretation arising from mineral reservations which are broadly drafted or include the term "other minerals." In Doochin v. Rackley, 610 S.W.2d 715 (Tenn. 1981), the court interpreted mineral reservations executed in the 1920's and early 1930's. The mineral reservations were for "all oil, gas, saline and mineral substances of any nature whatsoever." The reservations did not specify the methods of extracting minerals that were contemplated by the parties. In deciding the case, the court distinguished strip mining from deep-rock mining and stated:

Strip mining temporarily or permanently destroys the surface of the land, depending on the success of reclamation efforts. Thus, strip mining is incompatible with the surface owner's enjoyment of his estate. See Skivolocki v. East Ohio Gas Co., 38 Ohio St.2d 244, 313 N.E.2d 374 (1974); Stewart v. Chernicky, 439 Pa. 43, 266 A.2d 259 (1970). This incompatibility and the physical and aesthetic effects on the environment distinguish strip mining from traditional deep mining.

*Id.* at 717. *In Doochin,* the court concluded that the contracting parties did not intend for one party to own the right to use and enjoy the surface of the land and for another party to own the right to completely disrupt that surface. Because strip mining for limestone in the region in question was not utilized until the 1940's, the court concluded that strip mining could not have been within the contemplation of the parties. *Id.* at 719.

Similarly, in Besing v. Ohio Valley Coal Co., Inc., of Kentucky, 293 N.E.2d 510 (Ind.Ct.App. 1973), the court considered a reservation involving "oil, gas and other minerals" to determine whether coal was a "mineral" within the ambit of the reservation. The court held the phrase "and other minerals" was ambiguous, and stated: "The phrase 'and other minerals' is susceptible of more than one reasonable interpretation

40

as to the grantor's intent." *Id*. at 512. *See also,* Lazy D. Grazing Ass'n v. Terry Lane, 641 F.2d 844 (10th Cir. 1981); United States v. 1,253.14 Acres of Land, Etc., State of Colo., 455 F.2d 1177 (10th Cir. 1972); Bumpus v. United States, 325 F.2d 264 (10th Cir. 1963); State Land Board v. State Department of Fish & Game, 408 P.2d 707 (Utah 1965); Farrell v. Sayre, 270 P.2d 190 (Colo. 1954).

In the case at bar, we conclude the mineral reservation clause is ambiguous because it is silent as to the method of mining operations the original grantor contemplated. The reservation does not clearly establish that the parties intended to allow open-pit or strip mining of the "other minerals" referred to in the reservation. The lower court therefore erred in finding that the mineral reservation was "clear, definite, unequivocal and unambiguous." Admission of extrinsic evidence regarding the parties' intent should be considered by the district court at trial on the merits.

From the record before us, it also appears that appellants are suffering irreparable harm to their surface estate as a result of respondent's open-pit mining operations. Further, we are satisfied that appellants have established a reasonable probability of success on the merits of the case. Accordingly, we reverse and remand this case to the district court, with instructions to grant appellants' motion for a preliminary injunction.