Margaret S. RYSAVY, Plaintiff
and Appellee,

v.

Leo J. NOVOTNY, Defendant
and Appellant.

No. 15371.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided Feb. 25, 1987.

John J. Simpson, Winner, for plaintiff
and appellee.

Stanley E. Whiting, Winner, for defendant and appellant.

FOSHEIM, Retired Justice.

In 1957, Margaret C. Rysavy (Rysavy) and her now deceased husband sold real estate located in Tripp County to Leo J. Novotny (Novotny) on a contract for deed. Rysavys reserved "one/half (1/2) of all the mineral rights on ... and also one/half of all the oil rights on" the property. Since approximately 1965, Novotny sold a rock-like substance removed from the land to various townships in Tripp County. The material was used to absorb moisture and improve the condition of dirt roads. Novotny apparently received over $32,000 from these sales. Rysavy sued Novotny, alleging that the material sold was a "mineral" under the reservation clause in the contract for deed. Novotny appeals from a grant of summary judgment in favor of Rysavy. We reverse.

Novotny submitted two successive motions for summary judgment. Several affidavits supported the first motion. Novotny's own affidavit stated the material was taken from a pit approximately two to three acres in size and sold for thirty cents per cubic yard. According to Novotny, the rock generally was located only 6 to 18 inches beneath the surface of the real estate and was extracted by a "D–9 Cat that pulls a ripper." It was then pushed into a pile. The buyer of the rock was responsible for loading it for shipment. Novotny first used the rock on his farm, where he spread the material on the ground to prevent erosion and reduce muddiness.

Novotny also submitted affidavits of various experts in support of his first motion; namely, Larry Engbrecht (Engbrecht), an engineer employed by the state and the resident engineer of Tripp County, and Marty Anderson (Anderson), Tripp County Highway Superintendent. They described the rock as a soil with a high liquid absorbancy ability. Because of this absorbant quality the substance provided a road surface which resisted muddying. Both described the material as a magnesia. Engbrecht remarked that the material was prevalent in southern Tripp County and was one of the cheapest substances avail-

able for use in surfacing roads. Anderson knew of no other use for the rock.

Rysavy apparently offered no evidence in opposition to Novotny's first motion for summary judgment.

In its memorandum decision denying Novotny's initial summary judgment motion, the trial court described the material as a "magnesia." It relied upon 54 Am.Jur.2d *Mines and Minerals* § 6, p. 192 (1971), in concluding the material was a "mineral" within the meaning of the reservation. This source provides that "in order for a substance to be considered a mineral it must have a definite chemical composition by which it can easily be recognized."

Novotny then filed a second motion for summary judgment which he supported by additional affidavits. These affidavits were from Gary L. Scholz (Scholz), a geologist, and Charles K. Shearer (Shearer), an engineer with the Mining Experiment Station at the South Dakota School of Mines and Technology. They conducted chemical and x-ray diffraction tests of samples of the material taken from Novotny's pit. The affidavit of Scholz stated the material was a weathered rock classified as shale or shaly siltstone. He stated the rock was typical of some of the composition of the land in the Winner area and in western South Dakota generally. According to Scholz, the material indicated no content of magnesium.

The affidavit of Shearer listed the major components of the material as quartz and montmorillonite. He described quartz as an oxide of silicon, the most abundant oxide in the earth's crust, enormous tons of which are used in producing building stone and concrete aggregate. Montmorillonite was described as a clay mineral suitable for certain industrial uses, although the suitability of the sample submitted to him for such purposes was very questionable. He also found traces of three other minor components. He described the material as a "quartzite rock," which in his opinion had no commercial value other than its use as an absorbative material.

Rysavy again submitted no showing in opposition to Novotny's second motion for summary judgment.

In denying the second motion, the trial court echoed its first ruling, stating "[s]ince it appears that the material sold by the Defendant has a definite chemical composition having certain definite chemical characteristics, occurs independently of the mere soil and is valuable in itself for commercial purposes, I hold that it is to be included within the term 'minerals' as used in the contract for deed."

Following the denials of Novotny's motions, Rysavy moved for summary judgment. She relied solely upon the previous affidavits submitted by Novotny. Novotny responded with additional affidavits. Novotny also subpoenaed the four witnesses previously named. The record contains no transcript of any hearing however. The trial court granted Rysavy summary judgment in the amount of $16,174.

Upon review of a grant of summary judgment, we apply the familiar *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (S.D.1968), guidelines under which this court must view the evidence most favorably to Novotny, the non-moving party. Also, the burden is upon Rysavy, the movant, to show clearly that no genuine issue of material fact exists, and that he was entitled to judgment as a matter of law. *E.g., Wilson, supra; Hamaker v. Kenwel-Jackson Mach., Inc.,* 387 N.W.2d 515 (S.D.1986).

It is readily apparent that much case authority is devoted to interpretation problems arising from mineral reservations which do not specifically mention what minerals are intended to be reserved. *See Christensen v. Chromalloy American Corp.,* 99 Nev. 34, 656 P.2d 844 (1983). However, the trial court correctly noted the absence of South Dakota case authority, and therefore we must be satisfied with this statutory guideline: "A grant is to be interpreted in favor of the grantee, except that a reservation in any grant ... is to be interpreted in favor of the grantor." SDCL 43–4–16.

Rysavy cites SDCL 45–5A–3 and 45–6C–3(7) in support of the trial court's judgment. SDCL 45–5A–3 defines a mineral as "any substance with economic value, whether organic or inorganic, that can be extracted from the earth, including oil and gas, but excluding water." SDCL 45–6C–3(7) reads the same but also excludes uranium. These statutes do not purport to define "mineral" for the purposes of reservation clauses in instruments of sale or conveyance, however. The purpose of Chapter 45–5A is to protect "surface owners from the undesirable effects of mineral development." SDCL 45–5A–2. "Mineral development" includes exploration for oil, gas and other minerals, extraction of oil and gas, but excludes mining. SDCL 45–5A–3; Truhe, *Surface Owner vs. Mineral Owner or "They Can't Do That, Can They?,"* 27 S.D.L.Rev. 376, 414 (1982). Chapter 45–6C is intended to promote discovery and mining of mineral deposits. SDCL 45–6C–2. Furthermore, these provisions were enacted in 1982, many years after execution of the contract for deed and commencement of the extraction in question. *See* SDCL 45–5A–3(2). A statute will not be applied retroactively unless there is a clear intention by the legislature that it so apply. SDCL 2–14–21; *State ex rel. Van Emmerik v. Janklow,* 304 N.W.2d 700 (S.D.1981); *Johnson v. Kusel,* 298 N.W.2d 91 (S.D.1980).

Rysavy also cites *Watt v. Western Nuclear, Inc.,* 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983) and *Chittim v. Belle Fourche Bentonite Products Co.,* 60 Wyo. 235, 149 P.2d 142 (1944). *Watt* held that gravel was included in the reservation of mineral rights by the federal government in land grants made under the Stock-Raising Homestead Act of 1916 (SRHA). In *Watt,* the Supreme Court relied heavily upon congressional intent behind the SRHA, and other federal statutes dealing with mineral rights. It is therefore of little help in deciding the present case in which those statutes do not apply. *Chittim* similarly does not establish guidelines for defining "mineral" as used in reservation clauses in contracts for deed. *Chittim* instead deals with the ownership of mining claims.

As Novotny points out, there is considerable evidence in the record that the material could not be extracted without destroying the surface of the overlying land. We assume this to be true for the purposes of summary judgment review. *See Hamaker, supra.* In such cases, the widely accepted and most prudent rule dictates that any such material is not a reserved "mineral," absent specific language to the contrary, or other showing that the parties intended otherwise. *See Downstate Stone Co. v. United States,* 712 F.2d 1215 (7th Cir.1983) (interpreting Illinois law) (citing *Kinder v. LaSalle County Coal Co.,* 310 Ill. 126, 141 N.E. 537 (1923)); *Harper v. Talladega County,* 279 Ala. 365, 185 So.2d 388 (1966); *Bambauer v. Menjoulet,* 29 Cal.Rptr. 874, 214 Cal.App.2d 871, 95 A.L.R.2d 839 (1963); *Morrison v. Socolofsky,* 43 Colo.App. 212, 600 P.2d 121 (1979); *Wulf v. Shultz,* 211 Kan. 724, 508 P.2d 896 (1973); *Little v. Carter,* 408 S.W.2d 207 (Ky.1966); *Holloway Gravel Co. v. McKowen,* 200 La. 917, 9 So.2d 228 (1942); *Fisher v. Keweenaw Land Association,* 371 Mich. 575, 124 N.W.2d 784 (1963); *Vang v. Mount,* 300 Minn. 393, 220 N.W.2d 498 (1974); *Witherspoon v. Campbell,* 219 Miss. 640, 69 So.2d 384 (1954); *Christensen, supra; Hovden v. Lind,* 301 N.W.2d 374 (N.D.1981); *Holland v. Dolese Company,* 540 P.2d 549 (Okla. 1975); *Whittle v. Wolff,* 249 Or. 217, 437 P.2d 114 (1968); *Doochin v. Rackley,* 610 S.W.2d 715 (Tenn.1981); *Reed v. Wylie,* 597 S.W.2d 743 (Tex.1980); *State Land Board v. State Department of Fish & Game,* 17 Utah 2d 237, 408 P.2d 707 (1965); *Shores v. Shaffer,* 206 Va. 775, 146 S.E.2d 190 (1966); *West Virginia Dept. of Highways v. Farmer,* 159 W.Va. 823, 226 S.E.2d 717 (1976); *Waring v. Foden,* 1 Ch. 276, 86 A.L.R. 969 (Eng.1932); Annot., 95 A.L.R.2d 843, 846 (1964); 54 Am.Jur.2d *Mines and Minerals* § 6 (1971). The rationale usually given is that a reservation of such material would in reality effectuate a grant of very little or nothing to the surface owner, and that the parties would not intend to negate

the substance of their transaction. *See Downstate, Whittle, Reed, supra.*

We note that in at least six of the jurisdictions above cited this rule was applied where the surface owner was extracting the substance in question, as was Novotny in this instance. *See Bambauer, Little, Holloway, Fisher, Holland, Shores, supra.* However, the rule is even more persuasive when the grantor who reserves mineral rights either in whole or in part seeks to exercise the reservation against the will of the grantee whose use of the land would be greatly, if not totally, frustrated. We further note that in *Salzseider v. Brunsdale,* 94 N.W.2d 502 (N.D.1959), the North Dakota Supreme Court applied this rule despite the existence of a statute virtually identical to SDCL 43–4–16 which stated that reservations would be interpreted in favor of the grantor. Rysavy argues *Salzseider* does not apply because the mineral reservation in that case was provided for by statute. However, the court in *Salzseider* stated the statutory reservation had the same meaning as if used in an ordinary conveyance. 94 N.W.2d at 504.

Our conclusion is reinforced by the fact that the trial court's ruling may well have placed into question the ownership of the surface and subsurface of significant portions of western South Dakota. Affidavits of Novotny's experts stated the material taken from Novotny's land was common in that area of the state. Again, we assume this to be true on appeal. Therefore, the trial court's ruling if allowed to stand could result in destruction of the surface and unsettle the ownership of this and other land bearing similar title reservations. *See Atwood v. Rodman,* 355 S.W.2d 206 (Tex. 1962).

Viewing the record most favorably to Novotny, it appears the material in question could not have been extracted without destroying the surface of the deeded land. Furthermore, there is an absence of evidence in the record that the parties intended to reserve this material, other than the general reservation of "mineral rights." Under the rule regarding destruction of the

surface estate which we adopt in this case, there must be other evidence allowing the conclusion that the parties intended to reserve the substance. These are genuine factual questions which precluded a grant of summary judgment.

Reversed.

All the Justices concur.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.