924 P.2d 716 (1996)
CLARK COUNTY SCHOOL DISTRICT, Appellant,
v.
Anne BUCHANAN, Respondent.
No. 27672.
Supreme Court of Nevada.
September 24, 1996.
*718 Kamer & Ricciardi and Scott M. Abbott, Las Vegas, for Appellant.
Richard Segerblom, Las Vegas, for Respondent.

OPINION
YOUNG, Justice:
Every dog must have its day, and this is the day for every dog trained to help our handicapped citizens. Respondent Anne Buchanan ("Buchanan"), a volunteer trainer of helping dogs for handicapped people, is also a music teacher for appellant Clark County School District ("CCSD"). When Buchanan asked CCSD if she could bring a helping dog she was training to her classroom, CCSD howled its disapproval. CCSD denied Buchanan's request because it believed that the presence of a dog in the classroom would distract Buchanan from teaching and could be detrimental to children who are afraid of dogs or allergic to dogs.
Buchanan filed a complaint seeking damages and injunctive relief against CCSD. The complaint was based upon a provision in NRS 651.075 that precludes places of public accommodation from refusing admittance to a person training a helping dog. The district court, in what might be seen as an attempt to teach an old dog new tricks, granted Buchanan's request for a preliminary injunction.
In this appeal, CCSD continues its dogged efforts by arguing that the district court did not properly apply NRS 651.075 or properly balance the hardships of the parties. Based on the reasoning in this opinion, there is an irresistible temptation to conclude that CCSD's appeal barks up the wrong tree. Accordingly, we affirm the district court's ruling, hopefully ending what might be viewed as another form of judicial dog fight.

FACTS
Buchanan is the only CCSD music instructor at the Vail Pittman Elementary School ("Vail Pittman") in Las Vegas. Each of Vail Pittman's 600 students is required to receive fifty minutes of music instruction per week. Buchanan is also a volunteer helping dog trainer for Canine Companions for Independence ("CCI"). Helping dogs assist non-blind handicapped persons as guide dogs assist blind persons. Helping dogs are trained to perform hundreds of daily functions for their masters. Buchanan was training "Maria," a 25-35 pound golden retriever, when the present dispute arose.
The purpose of Buchanan's role in helping dog training is to acclimate a helping dog to a home environment and the public environment that the dog's future master must frequent. When in a public environment, helping dogs are trained to refrain from contact with other humans, unless directed, and will typically lie down or sleep next to their master for extended periods of time. If not properly trained for such environments, training dogs often fail to become helping dogs.
During the 1994-95 school year, the dog days began. Buchanan asked CCSD to allow her to bring Maria to her classroom every day to lie down or sleep under her desk. According to Buchanan, such exposure was essential for Maria's training because if Maria were left at home, Maria would not properly learn how to lie still in the company of other human beings. CCSD denied Buchanan's request, in part because CCSD believed the presence of Maria in the classroom would distract Buchanan from instructing students. Also, CCSD believed it was improper to force students who were afraid of dogs or allergic to dogs to attend music class in the presence of Maria.
Refusing to take CCSD's decision lying down, Buchanan filed a complaint based upon NRS 651.075,[1] seeking damages and injunctive *719 relief against CCSD. On September 1, 1995, the district court granted Buchanan a preliminary injunction. In pertinent part, the injunction read as follows:
1. BUCHANAN'S Motion for Preliminary Injunction is hereby granted. The DISTRICT shall allow BUCHANAN to bring her training dog to her classroom during working hours.
2. BUCHANAN shall comply with all legitimate conditions the DISTRICT may require to implement this ORDER.
3. If, after BUCHANAN has been allowed to bring the dog to her classroom, the DISTRICT identifies serious difficulties and/or dangers created by the presence of BUCHANAN's dog which cannot be resolved by BUCHANAN and/or her union, the Clark County Classroom Teachers Association, the DISTRICT may bring the matter back to this Court for further consideration.

DISCUSSION
A preliminary injunction is available if an applicant can show a likelihood of success on the merits and a reasonable probability the non-moving party's conduct, if allowed to continue, will cause irreparable harm. Pickett v. Comanche Construction, Inc., 108 Nev. 422, 426, 836 P.2d 42, 44 (1992); Berryman v. Int'l Bhd. Elec. Workers, 82 Nev. 277, 280, 416 P.2d 387, 389 (1966). The district court may also weigh the public interest and the relative hardships of the parties in deciding whether to grant a preliminary injunction. See Ellis v. McDaniel, 95 Nev. 455, 459, 596 P.2d 222, 224-25 (1979).
While the granting of a preliminary injunction lies within the discretion of the district court, the reasons for its issuance must be sufficiently clear. Las Vegas Novelty v. Fernandez, 106 Nev. 113, 118-19, 787 P.2d 772, 775 (1990); Number One Rent-A-Car v. Ramada Inns, 94 Nev. 779, 780, 587 P.2d 1329, 1330 (1978). The reasons determined by the district court should not be disturbed on appeal unless they are clearly erroneous. Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 592 (1990).

Likelihood of success on the merits
Typically, a party moving for an injunction must show a reasonable probability of success on the merits. Christensen v. Chromalloy Amer. Corp., 99 Nev. 34, 36, 656 P.2d 844, 846 (1983). In this case, the district court concluded that "it is highly probable that BUCHANAN will succeed in this lawsuit."
According to NRS 651.075(1)(b), a place of public accommodation is precluded from refusing admittance to a person training a helping dog. A place of public accommodation includes "any nursery, private school, university or other place of education." NRS 651.050(2)(k). If a person training a helping dog is denied access to a place of public accommodation, that person may seek injunctive relief. NRS 651.090(2)(a).
We conclude that Buchanan is a trainer of helping dogs and that Vail Pittman is a place of public accommodation. Accordingly, we conclude that NRS 651.075(1)(b) entitles Buchanan to be admitted to Vail Pittman with whatever helping dog she may be training.
CCSD argues that an interpretation of NRS 651.075(1) which allows an employee at a place of public accommodation to benefit from the statute's protection of helping dog trainers is inappropriate. CCSD asserts that the statutory guarantee of admittance and service for trainers at places of public accommodation envisioned protection for non-employees of those public entities.
NRS 651.075(1) is intended to protect handicapped persons who rely on a trained dog for assistance from being excluded from public places. See NRS 651.075(1). Presumably, this protection would apply to a handicapped teacher who needed a helping dog for assistance, thereby mandating a school district to accommodate that teacher by allowing the dog in the classroom. We conclude that the policy and spirit of NRS 651.075(1)(b) was to extend the same protection *720 to the trainers of assistance dogs, whether they are employees or not. Without such protection, helping dogs could not be properly trained to assist handicapped individuals who work in public places. See Hunt v. Warden, 111 Nev. 1284, 903 P.2d 826 (1995); Houtz v. State of Nevada, 111 Nev. 457, 893 P.2d 355 (1995).[2]
Despite our interpretation of NRS 651.075(1), we recognize that the Nevada Legislature has placed an enormous responsibility upon CCSD to manage the education of Clark County's students. Part and parcel with that responsibility is CCSD's authority to make operational decisions regarding the functioning of its schools. Accordingly, CCSD has the power to place reasonable restrictions upon the rights of its employees while they are in the workplace.
Despite the dissent's deep-felt concern that our ruling will perpetrate an overwhelming burden upon many employers in our state, it should be clear from our opinion that the right of a helping dog trainer to train a dog in a place of employment must be balanced against an employer's operational needs. Just as the district court ruled in this case, an employer and a helping dog trainer should take reasonable steps to accommodate each other's needs. In cases where legitimate health concerns are proven, the employer may properly place reasonable restrictions on an employee's right to train a helping dog as are necessary to prevent health problems.
In this case, we conclude that CCSD's refusal to negotiate a reasonable compromise with Buchanan, despite Buchanan's rights under NRS 651.075(1), was unreasonable. Buchanan was willing to place her dog under her desk or in another classroom to accommodate the needs of her students. Therefore, we conclude that the district court correctly ruled that Buchanan has a high probability of success on the merits of this dispute. Also, we conclude that the district court properly fashioned its injunction by requiring Buchanan to comply with legitimate restrictions CCSD may place on her training dog's presence in the classroom.

Irreparable harm
In considering the necessity of a helping dog trainer taking a training dog everywhere the trainer goes, the district court commented:
To properly complete the training of each dog it will be necessary for BUCHANAN to take the dog with her everywhere she goes, including to her place of employment, the elementary schools owned and operated by the DISTRICT. A helping dog must be trained to be the constant companion of her master, and such training requires that the dog accompany its trainer during her working hours.
....
Unless the DISTRICT is ordered to allow the dog to accompany BUCHANAN to work the dog's training will be incomplete and the CCI training being conducted by BUCHANAN will suffer irreparable harm.
Helping dogs are trained to serve their master in the environment where their master works. To ensure that a helping dog can fulfill that responsibility, the training program must expose the training dog to the environments where the future master will work. Accordingly, we conclude that the district court's conclusion was not clearly erroneous. See Hermann Trust, 106 Nev. at 566, 796 P.2d at 592.

Public interest
CCSD argues that the district court's ruling ignores the public's interest in CCSD's ability to serve the health, safety, and educational needs of 168,000 children. According to CCSD, the presence of a dog in the classroom creates a health concern for students with allergic reactions to dogs and could distract students from learning. CCSD also points out that a few parents called or sent letters to CCSD protesting the presence of a dog in their children's classroom.
We conclude that CCSD ignores the public's interest in facilitating the training of helping dogs. These dogs allow handicapped *721 individuals to conduct full and productive lives that benefit society. Presumably, this very public interest concern motivated the legislature's enactment of NRS 651.075. Originally, NRS 651.075 precluded places of public accommodation from hindering access to handicapped individuals with guide or helping dogs. In 1987, that same protection was extended to the trainers of guide and helping dogs. 1987 Nev.Stat., ch. 359, § 12 at 824. Accordingly, we conclude that CCSD's argument is without merit.

Balance of hardships
CCSD contends that the district court did not properly consider the hardship that CCSD will suffer if Buchanan is allowed to take her dog to class. We conclude that CCSD has cried wolf one too many times. First, other teachers at Vail Pittman are allowed to have pets in their classrooms for educational purposes. The presence of a helping dog, sleeping beneath a desk, could not be more distracting than the caged rabbits, snakes, lizards, breeding gerbils, rats, and aquarium full of fish which are present in another Vail Pittman classroom  apparently without complaint!
Second, the Carson City School District has allowed training dogs in classrooms for many years, and the dogs do not distract from teaching. In fact, the presence of the dogs helps instill in students the importance of community involvement and concern for the well-being of our fellow person.
Third, CCSD admits that if Buchanan were actually handicapped, they would comply with NRS 651.075. This concession displays the limited hardship that CCSD will suffer pursuant to the preliminary injunction under review in this case.
Fourth the district court, with appropriate foresight, accounted for any hardships CCSD might suffer by requiring Buchanan to cooperate with CCSD in implementing the preliminary injunction. Buchanan is willing to move her training dog to another classroom if a student is afraid of dogs or allergic to dogs, and the training dog would remain under Buchanan's desk where children would not see her.

CONCLUSION
We conclude that CCSD's appeal is without merit because the district court properly interpreted NRS 651.075 and properly evaluated the relative hardships of the parties. Accordingly, we should not discriminate against "man's best friend." Justice must be even-pawed!
SHEARING and ROSE, JJ., concur.
STEFFEN, C.J., and SPRINGER, J., dissent.
STEFFEN, Chief Justice, dissenting:
Despite the natural appeal of the majority's opinion, and the laudable purposes which have prompted Ms. Buchanan to pursue this litigation, I am unable to find a basis within the applicable statutes for her right to prevail over the Clark County School District (hereinafter "CCSD"). I therefore respectfully dissent.
If this court were simply at liberty to rule based upon emotion and the poignancy associated with helping dogs and the purposes for which they are trained, I would not hesitate to climb aboard the majority's bandwagon. Indeed, like so many among humankind, I have a great appreciation for "man's best friend," but unfortunately, that fact can have no bearing on the resolution of this appeal.
The majority, I suggest, erroneously interpret NRS 651.075(1)[1] as being applicable to the instant case. In the first place, the referenced statute makes it unlawful for places of public accommodation to "refuse admittance or service" (emphasis mine) to: (a) persons with visual, aural or physical disabilities accompanied by service animals such as a helping dog; and (b) to persons training such animals. The only reasonable *722 inference to be drawn from the statute is that places of public accommodation must be accessible to such persons in the company of their service animals, including helping dogs. These persons are to be admitted and/or serviced. I do not perceive a basis for concluding that the statute was intended to apply to employees of a place of public accommodation, who are neither admitted nor serviced according to the ordinary and accepted meanings of those terms as used in the statute. They are entitled to be present at their respective places of employment under the terms of their hiring.
Moreover, reference to the extremely broad definition of a "place of public accommodation" as specified in NRS 651.050(2)(a) through (o), demonstrates that the legislature did not intend that disabled persons accompanied by helping dogs or other service animals be denied either admittance or service in any place where the public is invited, thereby assuring their entitlement to the same quality of life, insofar as possible, that all other persons enjoy by reason of the availability of such places of public accommodation. It is also clear from the broad definition of "place of public accommodation" and the language of NRS 651.075(1)(b), that persons training service animals such as helping dogs are also not to be denied access to such public places and the services provided therein because these ordinary experiences of life are necessary to the effective training of such animals in preparation for their role in assisting the disabled when they are visiting such places and utilizing such services.
NRS 651.070 bespeaks the purposes for which NRS 651.075(1)(a) and (b) were enacted by providing that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of ... disability." NRS 651.080 makes it a crime (misdemeanor) for any person to interfere with or deny or attempt to deny any right or privilege secured by NRS 651.070.
Under the majority's interpretation of NRS 651.075(1)(b), public or private employers who deny their employees the right to train helping dogs and other service animals on the job, would be subject to criminal prosecution. We may thus assume, hypothetically, that if it were monetarily profitable to train helping dogs or other service animals, all school teachers who desired to earn additional money while they were teaching their students, could insist on their right to have their service animals in the classrooms with them. Although Anne Buchanan is a volunteer, training her helping dog for the charitable purpose of providing a highly beneficial service to the disabled, the majority's ruling is in no sense limited to Ms. Buchanan or to employees who are training animals without benefit of monetary gain.
Even if the majority were to "rewrite" the statute and limit the purview of their opinion to persons who train service animals without monetary gain, the problems created by the majority should be readily apparent to all. Fortunately, we have many citizens who are charitably motivated, who would undoubtedly be willing to train service animals while at work. Thus, hospitals, pharmacies, restaurants, cafeterias, bakeries and any number of other places specifically named and/or otherwise included within the definition of "place of public accommodation" could be faced with untold problems such as maintenance of sanitary and sterile conditions and avoidance of dangerous distractions occasioned by employees who insisted upon having service animals in training on the job with them. When the legislature included, without special limitations, such facilities as hospitals, pharmacies and bakeries within the definition of "places of public accommodation," there was no provision specifically limiting access to public areas only. However, by including employees among those who are entitled to be accompanied by service animals in training, the majority have expanded the scope of places of public accommodation to include all areas where employees are required to work, whether accessible to the public or not. Clearly, therefore, the majority have exposed such areas as those committed to "employees only" to the rights granted by the statutes as interpreted by the majority.
One must wonder how the majority would deal with a newborn nursery in a hospital *723 where one or more of the pediatric nurses insisted on having a service animal in training at her side. Today's ruling would not only permit it, but could subject the hospital to criminal sanctions if the nurse showed up training a helping dog on the job and was either terminated or forced to remove the dog. How about the bakery where the employee reaches down and pets or positions the service animal he or she is training, and then touches the bakery products destined for the consumer? Or how about the pharmacist who, while filling a prescription, is distracted by his training service animal to the fatal detriment of the customer? I am not comfortable with the anticipated response that people would not be that unreasonable, as we can expect otherwise based upon human experience.[2]
Another serious consequence of the majority's ruling concerns the "tail wagging the dog." Here, the CCSD is accorded no deference in determining how to best educate the students over whom it has control and responsibility. Instead of the CCSD determining what is best under all of the circumstances and conditions that can arise in the course of educating and safely housing and handling thousands of unique students and trying to please thousands of unique parents, the majority have determined that individual teachers may set school policy and standards when it comes to training service animals on the job. I am concerned about how far the majority's opinion will travel in allowing the courts to micro-manage the schools and usurp the management prerogatives of the experts who have been trained and carefully selected for these very purposes.
I also suggest that the majority have concluded inadvisedly that "CCSD ignores the public's interest in facilitating the training of helping dogs." I believe it is highly unlikely that CCSD's decision not to allow Ms. Buchanan to train the helping dog while engaged in her teaching duties at school would jeopardize the success of training programs designed to provide disabled persons with necessary service animals. The majority have cited no credible authority (aside from what I consider to be their own erroneous interpretation of NRS 651.075) in support of their conclusion. Indeed, if Ms. Buchanan's inability to train her helping dog during the time of her teaching responsibilities will jeopardize the training program for these animals, as the majority seem to think, then the training program must be in serious difficulty  a premise the majority have failed to document.
Moreover, to conclude that CCSD has ignored the public interest in facilitating the training of helping dogs suggests that the school district should have balanced its decision involving Ms. Buchanan more in favor of animal training for the disabled than the educating of its students, a proposition that is unsound on its face. CCSD's primary responsibility is to see that the students under its jurisdiction receive the best education possible under conditions that are safe and conducive to learning and development. CCSD has no other competing allegiance, and I suggest that it is unwise for this court to superimpose its own lack of experience and insight upon the operational decisions of the school district in whom the public trust for making these decisions is reposed.
I also find it difficult to accept the logic that because teachers are allowed to have such sources of "distraction" as "caged rabbits, snakes, lizards, breeding gerbils, rats, and aquarium[s] full of fish" in the classroom, CCSD cannot restrict the presence of other distracting animals, such as helping dogs. The syllogism posed by the majority is unconvincing. CCSD has every right to conclude that certain types of living creatures properly housed within certain classrooms enhance the learning experiences that are determined to be compatible with the school's mission to educate the students. This does not mean that because the school district allows certain animals to be securely exhibited in classrooms, that all animals must be allowed to be similarly exhibited. To suggest that CCSD cannot differentiate between the creatures it will use as part of the *724 educating process is hardly the prerogative of this court, and is certainly not warranted from the evidence of record.
My point is that if CCSD had decided to accommodate Ms. Buchanan and her desire to train the helping dog while simultaneously fulfilling her responsibilities to her students, I would have had no difficulty accepting the decision as being within the discretionary authority of the school district. For the same reason, I would sustain the CCSD in its decision not to allow teachers to train helping dogs in the classrooms. Thus, if the Carson City School District is willing to allow the training of helping dogs in the classroom, I would not interfere in its right to make that decision. But quite like students and parents, school district officials have differences of opinion as to the best methods of educating students, and this court is simply not equipped or empowered to conclude that since one method appears to work successfully in one school district, other school districts are bound to follow suit.
The major flaw in the majority's opinion is its erroneous conclusion that NRS 651.075 applies to employees of "places of public accommodation." Because of the majority's ruling, virtually all employers that admit the public to their places of business, public or private, must now realize that this court has authorized their employees to undertake the training of service animals on the job, and any attempt to interfere with the presence and training of such animals by their employees may subject the employer to criminal sanctions. Perhaps the legislature will see fit to remedy some of the problems that appear to be a likely result of today's decision.
For the reasons noted above, I respectfully dissent, and would reverse the order of the district court granting the preliminary injunction against CCSD.
SPRINGER, Justice, dissenting:
The trial court issued an injunction ordering that Ms. Buchanan, a school teacher, be permitted "to bring her training dog to her classroom during working hours." The legal basis for the injunction is NRS 651.075(1) which makes it "unlawful for a place of public accommodation to ... refuse admittance or service to a person training" a guide dog.
Assuming that a place of accommodation has the capacity to refuse anything, I find no evidence in this case that any place has refused either "admittance" or "service" to Ms. Buchanan. If we are going to call the Clark County School District a "place," then this "place" has not refused to provide "service" to Ms. Buchanan and it has not refused "admittance" to any "place of public accommodation." All the district has done is to tell Ms. Buchanan that, as an employee, she has no right to keep a dog under her desk all day. This is a perfectly permissible condition to put upon Ms. Buchanan's employment.
It may be that under NRS 651.050(2)(k) a "private school, university or other place of education" may, under certain circumstances (say a public assembly or athletic event), become a "place of public accommodation"; but certainly, not every nook and cranny and every classroom in every "place of education" is at all times to be deemed a "place of public accommodation."
It is quite clear to me that the statute in question is intended to apply only to persons who seek admission to public events or seek services that are offered to the public at large. The statute cannot be read to place limits on an employer's right to prohibit employees from keeping pets with them on the job.
Although at certain times certain locations within Ms. Buchanan's "place of education" might properly become a "place of public accommodation," her classroom is not a place of public accommodation. Even if her classroom could be considered a place of public accommodation, Ms. Buchanan has not been denied "admittance" to this place, she has merely, as part of the employer-employee relationship, been told that she could not keep her dog with her during her classroom day.
I think that the trial court was in error when it granted an injunction based on NRS 651.075(1). I would cancel the injunction.
NOTES
[1] The pertinent portion of NRS 651.075(1) reads as follows:

1. It is unlawful for a place of public accommodation to:
(a) Refuse admittance or service to a person with a visual, aural or physical disability because he is accompanied by a guide dog, hearing dog, helping dog or other service animal;
(b) Refuse admittance or service to a person training such an animal....
[2] In line with the dissent, we recognize and respect the legislature's right to review our interpretation of NRS 651.075(1) and clarify its intent by amending NRS 651.075(1).
[1] In pertinent part, NRS 651.075(1) provides:

1. It is unlawful for a place of public accommodation to:
(a) Refuse admittance or service to a person with a visual, aural or physical disability because he is accompanied by a guide dog, hearing dog, helping dog or other service animal;
(b) Refuse admittance or service to a person training such an animal....
[2] Parenthetically, I note that neither the majority opinion nor this dissent has any bearing on the right of disabled persons to have their helping dogs or other service animals with them in the places of their employment.